UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUANA HERNANDEZ, AS ADMINISTRATRIX OF THE ESTATE OF DANNY NICACIO and ARMANDO MAISONET,<br>    Plaintiffs<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY and UTICA MUTUAL INSURANCE COMPANY,<br>    Defendants. | CIVIL ACTION NO. 05-40141-FDS |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR JOINT MOTION TO DISMISS PURSUANT TO FED. R.
CIV. P. 12 (b)(6), OR TO STAY ACTION IF NOT DISMISSED IN ITS ENTIRETY**

Defendants, Scottsdale Insurance Company ("Scottsdale") and Utica Mutual Insurance Company ("Utica") (collectively, "Defendants"), submit this Memorandum of Law in Support of their Joint Motion to Dismiss the Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12 (b)(6).

This is a declaratory judgment action in which Plaintiff Juana Hernandez, as Administratrix of the Estate of Danny Nicacio, and Plaintiff Armando Maisonet (collectively, "Plaintiffs"), seek a declaration that there is coverage for any judgment they may obtain in lawsuits they filed against Defendants' insureds (*e.g.*, Saeilo, Inc. d/b/a Kahr) in Massachusetts Superior Court (the "Underlying Actions"). The Underlying Actions allege that Defendants' insureds improperly allowed the manufacture and distribution of a gun that was involved in a December 24, 1999 shooting outside the Tropigala nightclub in Worcester (the "December 24, 1999 shooting"). There has been no resolution of the Underlying Actions.

The Court should dismiss this action in its entirety because (1) Plaintiffs are not insureds under Defendants' policies, and therefore, do not have standing to seek declaratory relief as to

the coverage available under these policies; and (2) even assuming, *arguendo*, that Plaintiffs had standing to bring this action, they have nevertheless failed to state a claim upon which relief can be granted because the claims in the Underlying Actions are not, as a matter of law, covered under the Scottsdale and Utica policies. If this Court does not dismiss this lawsuit in its entirety, Defendants respectfully request that the Court stay this case until the resolution of the Underlying Actions.

## BACKGROUND

### A.   The Plaintiffs' Claims

Plaintiffs filed a Complaint pursuant to G.L. c. 231A, §1 in which they seek a declaration that Scottsdale and Utica have an obligation to cover the claims set forth in the Underlying Actions (the "D.J. Complaint") (A copy of the D.J. Complaint is attached to the Affidavit of Caryn L. Daum, Esq., submitted herewith, as Exhibit 1.) The Underlying Actions are captioned: Juana Hernandez, as Administratrix of the Estate of Danny Nicacio or Danny Guzman, et al. v. Kahr, Inc., et al., Docket No. 02-1747 ("Hernandez Action") and Maisonet v. Kahr, Inc., et al., Docket No. 02-2025 ("Maisonet Action"). (The Complaints in the Underlying Actions are attached to the Affidavit of Caryn L. Daum, Esq. as Exhibits 2 and 3, respectively.)[1]

Both the Maisonet Action and the Hernandez Action allege that Saielo improperly allowed a gun to enter the stream of commerce, and that this gun caused death and/or injury when it was used in the December 24, 1999 shooting in front of the Tropigala nightclub in Worcester. The Complaints in the Underlying Actions allege that:

> As a result of Saielo, Inc.'s wanton, reckless and grossly negligent
> conduct, including, but not limited to, failing to implement
> reasonable safeguards to prevent theft of guns and gun

---

[1] In considering the Defendants' motion to dismiss, the Court may consider the Complaints in the Underlying Actions, which are "central to" the Plaintiffs' claims and "sufficiently referred to" in Paragraphs 16 and 24 – 27 of the D.J. Complaint. Watterson v. Page, 987 F. 2d 1, 3-4 (1st Cir. 1993).

2

> components, ignoring industry standards for inventory control, failing to conduct rudimentary background checks and failing to supervise employees, and failing to report stolen firearms, Kahr, Inc. employees were able to remove untraceable handguns and components from defendants' facilities in Worcester, MA undetected, and place them in the stream of commerce.

(See Hernandez's Second Amended Complaint, ¶ 99, attached to the Affidavit of Caryn L. Daum, Esq. as Exhibit 2; see also Maisonet's Second Amended Complaint, ¶ 101, attached to the Affidavit of Caryn L. Daum, Esq. as Exhibit 3). Plaintiffs claim that a Saielo gun was used in the December 24, 1999 shooting. Moreover, all claims in the Underlying Actions arise from the alleged use of a Saielo gun in the December 24, 1999 shooting.

In this case, Plaintiffs (who are not insured under the Scottsdale or Utica policies) contend that Scottsdale and Utica have a duty to defend and indemnity their insureds in the Underlying Actions. Both Scottsdale and Utica have denied coverage for the Underlying Actions, as the claims set forth in the Underlying Actions are expressly excluded from coverage pursuant to product exclusions contained in the Scottsdale and Utica policies. Indeed, such exclusions preclude coverage as a matter of law. See Brazas Sporting Arms, inc. v. American Empire Surplus Lines Ins. Co., 220 F. 3d 1 (1st Cir. 2000) (holding that the products exclusion precludes coverage for claims against gun manufacturers and distributors alleging that the negligent manufacture and/or distribution of guns caused injury or death).

**B.    The Scottsdale Policy**

Scottsdale issued a Commercial Lines Policy, Policy No. CLS0499959, to its named insured, Saielo, Inc. d/b/a Kahr and d/b/a Saielo Manufacturing Industries, covering the Policy period of January 12, 1998 to January 12, 1999 and renewed for the period of January 12, 1999

to January 12, 2000 (the "Scottsdale Policy").[2] (A certified copy of the Scottsdale Policy is attached to the Affidavit of Caryn L. Daum, Esq. as Exhibit 4.)

The Scottsdale Policy contains an endorsement entitled "EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD". This endorsement (hereinafter, the "Products Exclusion") states that: "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'"

The terms "products-completed operations hazard" is defined in pertinent part as follows:

16. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from your premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your physical possession; or

        (2) Work that has not been completed or abandoned….

The term "your product" is defined under the policies as follows:

20. "Your product" means:

    a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1) You;
        (2) Others trading under your name; and
        (3) A person or organization whose business or assets you have acquired; and

    b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

    a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

---

[2] In considering the Defendants' motion to dismiss, the Court may consider the Scottsdale and Utica Policies, which are "central to" the Plaintiffs' claims and "sufficiently referred to" in Paragraphs 4 – 6, 16 and 24 – 29 of the D.J. Complaint. See Footnote 1, *supra*.

4

      b.      The providing or failure to provide warnings or instructions.

21.    "Your work" means:

      a.      Work or operations performed by you or on your behalf; and

      b.      Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

      a.      Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      b.      The providing of or failure to provide warnings or instructions.

**C.**    **The Utica Policy**

Utica Mutual Insurance Company ("Utica") issued a Commercial Package Policy, Policy No. CPP 2160756 to its named insureds, Saeilo USA, Inc., Saeilo, Inc., & Saeilo Machinery USA, Inc., covering the Policy period of July 15, 1999 to July 15, 2000 (the "Utica Policy"). (A copy of the Utica Policy is attached to the Affidavit of Janice Riley, submitted herewith). The Utica Policy contains an exclusion entitled "EXCLUSION – DESIGNATED PRODUCTS" which provides as follows:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
>
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> SCHEDULE
>
> Designated product(s):  ALL FIREARMS MANUFACTURING
>
> This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in Schedule.

## ARGUMENT

Plaintiffs are seeking declaratory relief from this Court regarding coverage afforded under the Scottsdale Policy and the Utica Policy, and allege in their D.J. Complaint as follows:

> It is the position of the plaintiffs that coverage for indemnity and defense is owed by defendants Scottsdale and Utica to insured Saielo, Inc. d/b/a Kahr Arms with respect to claims set out in: Worcester Superior Court Action 02-2025 (Maisonet action) and Worcester Superior Court Action 02-01747 (Hernandez action). …

(See D.J. Complaint, ¶16). Plaintiffs' D.J. Complaint should be dismissed as: (i) Plaintiffs do not have standing to bring a declaratory judgment action against Defendants; and (ii) there is, as a matter of law, no coverage under the Scottsdale or Utica Policies for the claims in the Underlying Actions. If the Court does not dismiss this case, it should, for the reasons discussed below, stay this case pending the resolution of the Underlying Actions.

### A.     Plaintiffs Do Not Have Standing

Under G.L. c. 231A, §1, a binding declaratory judgment may be made by a court in a case in which an actual controversy has arisen. The question of whether there is an actual controversy is closely related to the question of whether a plaintiff has standing. Massachusetts Association of Independent Ins. Agents & Brokers, Inc. v. Commissioner of Insurance, 373 Mass. 290, 292 (1977). Both actual controversy and legal standing are required for declaratory relief. United Oil Paintings, Inc. v. Commonwealth, 30 Mass. App. Ct. 958, 959 (1991). A plaintiff with standing is one who has personal rights that will be directly affected in a significant way by the declaratory judgment. Bonan v. Boston, 398 Mass. 315, 320 (1986). The declaration sought must be intended to have an immediate impact on the rights of the parties. United Oil Paintings, Inc., 30 Mass. App. Ct. at 959.

Furthermore, "[t]o have standing in any capacity, a litigant must show that the challenged action has caused the litigant injury." Slama v. Attorney General, 384 Mass. 620, 624 (1981).

"Not every person whose interests might conceivably be adversely affected is entitled to review." Group Ins. Comm'n v. Labor Relations Comm'n, 381 Mass. 199, 204 (1980). Indeed, representative standing is "generally limited to cases in which it is difficult or impossible for the actual rightholders to assert their claims." Slama, 384 Mass. at 624.

In their D.J. Complaint, Plaintiffs seek to have this Court decide the issue of whether Scottsdale's and Utica's denial of coverage to their insured, Saeilo, was proper. Plaintiffs, however, have no legal standing to bring such an action under c. 231A, §1 as the Plaintiffs do not have any personal rights that will be directly affected by the declaratory judgment. Plaintiffs are not insureds under either Scottsdale or Utica policy, nor do they possess any judgments against any party insured by Scottsdale or Utica. The right to litigate the coverage issue belongs to Saeilo, and to Saeilo only.[3] Accordingly, the Plaintiffs lack standing in this action.

B.      **The Scottsdale and Utica's Policies Do Not Afford Coverage for Plaintiffs' Claims**

A court must dismiss a complaint for failure to state a claim when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Blank v. Chelmsford OB/GYN, P.C., 420 Mass 404, 407 (1995) (quoting Nader v. Citron, 372 Mass. 96, 98 (1977)). Here, it is beyond doubt that Plaintiffs cannot prove any set of facts to support their claims. This case should therefore be dismissed.

The United States Court of Appeals for the First Circuit has made clear that the Products Exclusion precludes coverage for claims against gun manufacturers and distributors for injury caused by a firearm. See Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F. 3d 1 (1st Cir. 2000).

In Brazas, the insured, a Massachusetts firearms distributor named Brazas Sporting Arms, Inc. ("Brazas"), sought a declaration that its insurer, American Empire Surplus Lines Insurance

---
[3] Saeilo has not made any claim arising out of Scottsdale and Utica's denial of coverage.

7

Company ("American Empire"), had a duty to defend and indemnify it in two lawsuits filed by or on behalf of gunshot victims alleging negligent distribution of firearms.  The American Empire commercial general liability policy issued to Brazas -- like the Scottsdale and Utica policies issued to Saielo -- contained a Products Exclusion.  The exclusion provided as follows:

> "This insurance does not apply to 'bodily injury' or 'property damage' included within the 'products-completed operations hazard.'"  Products-completed operations hazard includes "all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:  (1) Products that are still in your physical possession; or (2) Work that had not yet been completed or abandoned." …

See Brazas, 220 F.3d at 2-3.

The underlying lawsuits at issue in Brazas charged Brazas and various manufacturers and dealers of handguns, as well as industry trade groups, with contributing to the overflow of guns in the market.  These lawsuits asserted, for example, that:

> Defendants have knowingly produced and distributed handguns in excess of the reasonable demand by responsible consumers in the lawful national handgun market, and they have knowingly failed or refused to take any meaningful steps to regulate and control the distribution and sale of their guns by retail dealers.  Their willful negligent conduct – individually and as an industry – has created and supplied an unlawful national market in firearms, the source of the handguns that killed and wounded plaintiffs and their loved ones.

Id. at 3.  The United States District Court for the District of Massachusetts held that the Products Exclusion applied, and that American Empire therefore had no duty to defend or indemnify Brazas.

Brazas appealed to the First Circuit, and the First Circuit affirmed the District Court's decision.  The First Circuit held that "the plain meaning of the [products] exclusion is that it applies to *all* product-related injuries."  Id. at 13-14 (emphasis added).  The First Circuit stated

that in analyzing coverage, it is necessary to consider the source of the alleged injuries rather than the specific theories of liability.[4]  It held that:

> In interpreting the phrase "arising out of" in the context of the case at hand, we are compelled by Massachusetts law to consider the "source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint [of the underlying civil action]."  Thus, in this case, firearms were the immediate source of the plaintiffs' injuries, and the fact that the plaintiffs, to reach the deep pockets of the firearms industry, contrived a theory of liability that targeted Brazas for its alleged participation in flooding the firearms market cannot affect the application of the exclusion provision.

Id. at 17-18 (citations omitted).

Other courts have followed the rationale set forth in the Brazas case.  In Beretta U.S.A. Corporation v. The Federal Insurance Company, 17 Fed. Appx. 250 (4th Cir. 2001), the Fourth Circuit upheld the granting of summary judgment in favor of the insurance defendants on the grounds that the insurance companies properly denied a defense and coverage to Beretta, a gun manufacturer, for claims of "negligent marketing and distribution of guns and public nuisance." Beretta U.S.A. Corporation, 17 Fed. Appx. at 251, 254.  The insurance companies relied on the Products Exclusion contained in the insurance policies issued to Beretta to deny both defense and coverage.  Id. at 251.

In 2004, the United States District Court for the District of Maine addressed a similar case.  In Massachusetts Bay Insurance Company v. Bushmaster Firearms, Inc., 324 F. Supp. 2d 110 (D. Me. 2004), the insured, Bushmaster Firearms, Inc. ("Bushmaster"), manufactured weapons, including a semi-automatic assault rifle that was allegedly used by two gunmen during

---

[4] Brazas attempted to argue that the civil actions at issue in its case did not actually allege injuries from Brazas' products, but rather injury caused by the company's business management and strategy, thereby rendering the exclusion provision inapplicable.  The First Circuit refused to accept this argument.  As such, any similar claim made by the plaintiffs would also be without merit.

9

a shooting rampage.  The victims of the shooting rampage and their families filed a lawsuit against Bushmaster, claiming that it created a "public nuisance" that affected the public generally and the victims, and that it negligently (with gross negligence, recklessness and outrageous indifference) distributed assault weapons and was liable for negligent entrustment. Massachusetts Bay Ins. Co., 324 F. Supp. 2d at 111.  The plaintiff insurers sought a declaratory judgment that they had no obligation to defend Bushmaster in the underlying lawsuits in light of the Products Exclusion in the Bushmaster policy.  See id.  Relying on the Brazas decision, the court concluded that there was no coverage available to Bushmaster for the plaintiff's claims, as the damage to the victims arose out of Bushmaster's product, the assault rifle.  See id. at 113.

In this case, as in Brazas, Plaintiffs are alleging that they or their relatives were wounded or killed by firearms manufactured or distributed by the Saielo.  Moreover, in this case, as in Brazas, the Plaintiffs are alleging that the Saielo was negligent in allowing the firearms to get into the hands of the person who shot them or their relatives.  As the source of the injuries at issue in the Underlying Actions is a firearm purportedly manufactured or distributed Saielo, all claims related to such injuries are, regardless of the theory of liability, excluded by the Products Exclusion.  See Brazas, 220 F. 2d at 4-10; see also Beretta, 17 Fed. Appx. at 252-56.  There is therefore no coverage available under the Scottsdale Policy or the Utica Policy.  Plaintiffs' D.J. Complaint should therefore be dismissed.

C. **If the Court Does Not Dismiss this Action, It Should, In the Alternative, Stay this Action Pending a Resolution of the Underlying Actions**

In the event that this Court does not dismiss this action in its entirety, Defendants request, in the alternative, that the Court stay this action until the question of liability and damages is decided in the Underlying Actions.  Plaintiffs' claim for declaratory relief is not ripe for adjudication, as the issue of whether Scottsdale and Utica have to indemnify their insureds

10

should not be litigated until it is determined in the Underlying Actions whether Saielo has any liability to Plaintiffs.[5]  Indeed, if Saielo is successful in its defense, the issues raised in this action will be moot.  Considerations of judicial economy weigh in favor of a stay of Plaintiffs' declaratory relief claims, pending the resolution of the Underlying Actions.

## CONCLUSION

For each of the foregoing reasons, Defendants respectfully request that the Court dismiss this action in its entirety.  If this Court does not dismiss this lawsuit in its entirety, Defendants respectfully request that this Court stay this action until such time as there is a resolution of the Underlying Actions.

Respectfully submitted,

| | |
|---|---|
| **Scottsdale Insurance Company**, By Its Attorneys, | **Utica Mutual Insurance Company**, By Its Attorney, |
| /s/ Caryn L. Daum<br>John W. Steinmetz (BBO #568108)<br>Caryn L. Daum (BBO #647001)<br>Robinson & Cole LLP<br>One Boston Place<br>Boston, MA 02108<br>(617) 557-5900 | /s/ James T. Scamby<br>James T. Scamby (BBO #629144)<br>Tucker, Heifetz & Saltzman, LLP<br>Three School Street<br>Boston, MA 02108<br>(617) 557-9696 |

Dated:  September 6, 2005

---

[5] Scottsdale and Utica have also been named as defendants in the Underlying Actions.  Plaintiffs are alleging that Scottsdale and Utica violated G.L. c. 93A and G.L. c. 176D because they denied coverage for the Underlying Actions.  The Superior Court has stayed these claims against Scottsdale and Utica pending resolution of the liability claims against their insured, Saielo.

**CERTIFICATE OF SERVICE**

    I, Caryn L. Daum, hereby certify that a true and accurate copy of the foregoing document was served by first-class mail, postage prepaid, on this 6th day of September, 2005, upon:

>Robert H. Beadel, Esquire
>Law Office of Hector E. Pineiro
>807 Main Street
>Worcester, MA 01610

>    /s/ Caryn L. Daum
>    Caryn L. Daum