UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUANA HERNANDEZ AS ADMINSTRATRIX OF THE ESTATE OF DANNY NICACIO and ARMANDO MAISONET,<br>　　　Plaintiffs<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY and UTICA MUTUAL INSURANCE COMPANY,<br>　　　Defendants | ) <br> ) <br> ) CIVIL ACTION NO. 05-40141FDS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

PLAINTIFFS' SURREPLY TO *Defendants' Reply in Support of Their Joint Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6), or to Stay Action if Not Dismissed in its Entirety*

　　　Plaintiffs Juana Hernandez and Armando Maisonet (collectively, "Plaintiffs"), by and through their counsel, hereby submit this surreply memorandum in support of their Opposition to Defendants' Joint Motion to Dismiss ("Opposition").

**Component Parts Are Not Products Subject to the Products Exclusion Contained in the Policies of Insurance Issued by Scottsdale and Utica**

　　　Defendants' *Motion to Dismiss* ("MTD") is quite silent on the issue of component gun parts. For example, defendants discuss the "Saeilo gun" p. 3, and argue that "the Products exclusion[1] precludes coverage for claims against gun manufacturers and distributors for injury caused by a firearm." MTD at p. 7. Contrast the defendants' *Reply* memoranda, in which defendants argue, "the exclusion applies separately to products (<u>which include parts</u>)" *Reply* at p. 2; "In (sic) cannot be disputed that the exclusion applies to Saielo's product at issue in this case (i.e., the Kahr Handgun <u>and its parts</u>)…" Id. Emphasis. Defendants' policies are devoid of the underlined language.

---

[1] This is defendants' chosen term for the exclusion language in the policies.

1

In Scottsdale's Commercial Lines Policy "Your Product" is defined on page 13:

*18. "Your product" means:*

*a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

*(1) You;*
*(2) Others trading under your name; or*
*(3) A person or organization whose business or assets you have acquired; and*

*b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

The word 'parts' appears not in a vacuum, but in the following context: "*furnished in connection with such goods or products.*" Emphasis. Scottsdale's insured (Kahr) manufactures and sells completed handguns. It is not a gun parts distributor. Scottsdale's thorough policy language protects Scottsdale if a legally distributed weapon malfunctions and someone claims injury because of a defective Kahr part connected with the distributed Kahr handgun. The exclusion should not be read to include the stolen component parts of this case.

Utica's Policy is far less thorough, offering no definitions. Instead it merely provides:

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*
*PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART*
        *SCHEDULE*
*Designated Product(s): ALL FIREARMS MANUFACTURING*
*This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of any of "your products" shown in the Schedule.*

Again, Plaintiffs submit that Utica's chosen words "all firearms manufacturing" do not suffice to allow Utica to disclaim coverage on the basis of the Products exclusion, where Utica's insured hired a drug addict, after a twenty minute interview, performed no background check to evaluate his suitability, gave him gun parts, taught him how to assemble those gun parts into a weapon, and then effectively ignored him.

**The *Brazas*, *Massachusetts Bay*, *Beretta*, and *Taurus* Cases are Factually Distinct from The Circumstances Underlying This Action and Are Not Persuasive**

Defendants erroneously contend that the Products exclusions contained in their respective policies of premises liability insurance, apply to preclude coverage because of the federal decisions in *Brazas*, *Beretta*, *Taurus,* and *Massachusetts Bay*. As explained in Plaintiffs' opposition papers, those four cases are not analogous. Plaintiffs' action is not one in which municipality plaintiffs sued a group of manufacturers and dealers, all of whom had lawfully sold or otherwise distributed completed products, where specific victims were unknown, and the municipality plaintiffs did not know whose weapon did the shooting.

*Brazas Sporting Arms, Inc. v. American Empire Surplus Lines, Inc*. 220 F3d 1 (1st Cir. 2002), *Beretta U.S.A. Corp. v. Federal Ins. Co.*, 117 F.Supp.2d 489 (Md. 2000), and *Taurus Holdings v. U.S. Fid. & Guar.,* 2005 WL 2296481 (Fla.) are cases involving suits by municipalities, seeking to recover for the costs incurred from gun violence in their communities, alleging market overflow, lacking identified weapons, and lacking particular plaintiffs. The Beretta decision has an added distinction; the Court pointed out that "Maryland does not follow the rule, adopted in many jurisdictions (such as MA), that an insurance policy is to be construed most strongly against the insurer." Id. at 493.

As for the decision in *Massachusetts Bay Insurance co. v. Bushmaster Firearms, Inc.*, 324 F.Supp.2d 110 (D.Me. 2004), John Alien Muhammad and Lee Boyd Malvo shot persons with a weapon purchased from a retail gun dealer, and Bushmaster was sued for negligently selling weapons to that retail gun dealer. The Court in *Massachusetts Bay* expressly noted the exclusionary language applied because Bushmaster had completed work and surrendered possession:

3

"It is indisputable that the Bushmaster assault rifle is 'your [Bushmaster's] product' within the meaning of these policies and that the injuries it inflicted occurred away from Bushmaster's premises <u>and after Bushmaster had completed all its work on manufacturing the assault rifle and had surrendered possession of it.  The damage it created was therefore within the products-completed operations hazard</u> and excluded from coverage.  Id. at 113, Emphasis

This highlighted language from *Bushmaster* refutes defendants' argument, that the product need not be completed and distributed/surrendered to be excluded from coverage.

**Plaintiffs Are Not Forbidden From Submitting Expert Affidavits**

Expert testimony is appropriately submitted where it will assist the judge or jury.  See *Sullivan v. Utica Mut. Ins*., 439 Mass. 387 (2003) ("The test for determining whether a particular matter is a proper one for expert testimony is <u>whether the testimony will assist the jury in understanding issues of fact beyond their common experience</u>…The standard of reasonable conduct for an insurer acting pursuant to its contractual obligation to defend any claim made against its insured is not a matter within the common knowledge." Id. at 402.  Emphasis.  Judges are afforded broad discretion to consider opinions of experts, and can choose to exclude portions where they are inappropriate.  See *Poulis- Minott v. Smith*, 388 F.3d 354 (1st Cir. 2004) ("We find that the Magistrate Judge was also within his discretion in allowing the allegedly conclusory and unreliable opinions of Smith's experts. Here again, the Magistrate Judge scrupulously considered each paragraph in question and determined that some opinions were inadmissible legal conclusions, while others could not be "characterized as `conclusory' Id. at 359.)  Simply put, defendants overstate things to say this court should not consider the opinions of Stephen M.A. Woodworth , Esq. under any circumstances.  Finally, it is disingenuous for defendants to simultaneously condemn Plaintiffs' submission of supporting documentation, even as they submit their own extraneous documentation in their *Reply*.

**Federal Court Abstention and Remand Is Proper At Any Time Where Federal Litigation Would Interfere with A State Scheme**

Plaintiffs suspect that the defendants removed this DJ action from the Superior Court to the U.S. District Court for Massachusetts because of the recent federal decisions in *Brazas, Beretta, Taurus* and *Massachusetts Bay*. The claims against Scottsdale and Utica for violations of 93A are State claims that require interpretation of a Massachusetts statute. Under *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817 (1938), "federal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 427 (1996). A seminal Supreme Court decision addressing abstention is *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098 (1943). "The fundamental concern in *Burford* is to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." *Pub. Serv. Co. of N.H. v. Patch,* 167 F.3d 15, 24 (1st Cir. 1998). Under *Burford*, a federal court may abstain from a case if its review of difficult questions of state law would be disruptive of the state's efforts to establish a coherent policy on an issue of public concern. Here that concern is consistent application and interpretation of 93A.

The defendants' argument that Plaintiffs' request for remand is untimely should not dissuade this Court from considering abstention and remand. See, e.g. *In Re Adelphia Communications Corp. Securities*, (S.D.N.Y. 2005), rejecting argument that motion for remand was untimely because it was made more than thirty days after removal:

> "However, the Court, in the absence of Second Circuit authority (which has not been brought to its attention) is persuaded by the reasoning of the Third Circuit in *Foster v. Chesapeake Ins. Co., Ltd*., 933 F.2d 1207, 1212-13 (3d Cir. 1991), that "reasons for remand of a removed case other than defects in removal procedure may be raised after the 30 days have elapsed." Adelphia at pp. 2-3.

**This is a Negligent Security Case to be Governed by Massachusetts Law**

The underlying action is a negligent security[2] case with 93A claims against the insurers, to be governed by Massachusetts law. "A basic principle of negligence law is that ordinarily everyone has a duty to refrain from affirmative acts that unreasonably expose others to a risk of harm." *Yakubowicz v. Paramount Pictures Corp*., 404 Mass. 624, 629 (1989) (citation omitted). Kahr breached that duty when it hired a crack-addict, without conducting a background check or drug test, to work in a gun manufacturing plant, which lacked security measures, that could have prevented theft of unserialized firearms components.

As plaintiffs successfully argued, when defeating Kahr's 2003 motion to dismiss, foreseeability is often the preeminent and determinative consideration in defining the scope of duties imposed under negligence law. *Whittaker v. Saraceno*, 418 Mass. 196, 198 (1994). The SJC has rejected arguments that negligent or even intentional acts by a third party absolve a defendant alleged to have negligent security. *Flood v. Southland Corp*., 416 Mass. 62 (1993) (rejecting defendant Southland's argument that it was not reasonably foreseeable that Darcy would stab the plaintiff and hence Southland had no duty to take steps to prevent or discourage such an attack. "Southland owed a duty of reasonable care to the plaintiff to prevent injury by third persons whether their acts were accidental, negligent, or intentional." *Id*. at 72. Reasonable foreseeability that a third party will cause harm to the plaintiff is determined by examining all the circumstances. Id. "Liability may be imposed if a defendant negligently failed to guard against the consequences of reasonably foreseeable criminal conduct" *Poskus v. Lombardo's of Randolph, Inc.*, **423 Mass. 637**, 639-640 (1996). Here both Mark Cronin and

---

[2] This is not a case where, in the words of the *Brazas* decision, "plaintiffs, to reach the deep pockets of the firearms industry, contrived a theory of liability that targeted Brazas for its alleged participation in flooding the firearms market" *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines*, 220 F3d. 1 (1st Cir. 2000).

6

Scott Anderson testified that, if Kahr had surveillance cameras or a metal detector, or an otherwise stricter security system, they would have thought twice about stealing component gun parts from Kahr's facility. Aff. Hector Pineiro.

**Recent Passage of The Commerce in Arms Act (CAA) Will Not Cause Dismissal of Plaintiffs' Premises Liability Actions Against Kahr**

The Worcester Superior Court has previously denied a motion to dismiss plaintiffs' claims for negligence and public nuisance against Kahr Arms, and the passage of 15 U.S.C. § 7901-03 ("the Act") will not change this result. The Act's legislative history reveals that the sponsors of the Act made abundantly and repeatedly clear that the bill would *not* grant immunity to gun makers and sellers:

*"This is not a gun industry immunity bill. …* This bill does not create a legal shield for anybody who manufactures or sells a firearm. It does not protect members of the gun industry from every lawsuit or legal action that could be filed against them. *It does not prevent them from being sued for their own misconduct."* 151 *Cong. Rec.* S. 9087 (July 27, 2005) (statement of Sen. Craig, lead sponsor of the bill) (emphasis added).

"As we have stressed repeatedly, this legislation will not bar the courthouse doors to victims who have been harmed by the negligence or misdeeds of anyone in the gun industry . . . *If manufacturers or dealers break the law or commit negligence, they are still liable*." 151 *Cong. Rec. S.* 9087 (July 27, 2005), at S. 9100 (remarks of Sen. Craig) (emphasis added).

Courts look to the statements of a bill's sponsors to discern Congressional intent. As the U.S. Supreme Court has held, "The fears and doubts of the opposition are no authoritative guide to the construction of legislation. It is the sponsors that we look to when the meaning of the statutory words is in doubt." *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384 (1951).

**Plaintiffs' 93A claims against Scottsdale and Utica in Worcester Superior Court Do Not Become Moot, Even if Kahr Arms Gains the Retroactive Protection Contained in the Recently Passed Commerce in Arms Act.**

Contrary to the assertion of defendants in the final page of their reply papers, Plaintiffs' claims against Scottsdale and Utica do *not* become moot, even if Saielo or Kahr is found to have no liability in the underlying actions. Chapter 93A is "a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." ... The relief available under c. 93A is "sui generis. It is neither wholly tortious nor wholly contractual in nature, and is not subject to the traditional limitations of preexisting causes of action." ... It "mak[es] conduct unlawful which was not unlawful under the common law or any prior statute." …Thus, a cause of action under c. 93A is "not dependent on traditional tort or contract law concepts for its definition." *Kattar v. Demoulas*, 433 Mass. 1, 12-13 (2000). "Their claim that there can be no c. 93A violation because they had a legal right to foreclose has no merit. Legality of underlying conduct is not necessarily a defense to a claim under c. 93A.**"** *Kattar v. Demoulas*, 433 Mass. 1, 13 (2000) citing *Schubach* v *Household Fin. Corp*., 375 Mass. 133, 137 (1978).

Moreover, the Plaintiffs' 93A demands[3] to Scottsdale (October 24, 2003) and Utica Mutual (March 1, 2004) claiming that Scottsdale and Utica were in violation of 93A and because of their failure to make any offer of settlement once liability became reasonably clear, pre-date passage of the Act, and surely these independent, State statute-based, 93A insurance claims are not affected by the Commerce in Arms Act in any way.

---

[3] Plaintiffs 93A demands contained the following language: "A third party claimant to an insurance policy has standing to seek recovery under G.L.c.93A against the insurer for its failure to effectuate a prompt, fair and equitable settlement pursuant to G.L.c.176D, Section 3(9)(f), of claims in which liability has become reasonably clear. Clegg v. Butler, 424 Mass. 413 (1997)." Declaratory Judgment Complaint at ¶¶24-27

**This DJ Action is Ripe and Plaintiffs Have Standing to Pursue A Declaratory Judgment Against Defendants Scottsdale and Utica**

Plaintiffs have standing to bring this declaratory judgment action under c.231A, because the $500,000-$550,000 remaining in General Star's eroding policy [Aff. Hector Pineiro] is not sufficient to compensate plaintiffs for their death and disability. According to the SJC, third party claimants are afforded third party standing to pursue claims directly against insurers. In fact, the SJC rejected as being "without merit" an argument by Utica Mutual that third party claimants lacked standing to seek recovery directly from an insurer for 93A violations. *Clegg v. Butler*, 424 Mass. 413, 418 (1997).

Plaintiffs' claim is ripe too; neither Scottsdale's nor Utica's policies identify themselves as excess policies, and Plaintiffs need not exact a settlement or judgment that exhausts the money remaining in General Star's eroding policy, in order to reach the policies of Scottsdale and Utica. The policies of Scottsdale and Utica are in jeopardy *now*. Thus, Plaintiffs *are* directly affected in a significant way by this declaratory judgment. Defendants argue that the plaintiff in a DJ action must show the challenged action has caused injury. There is ample authority for the proposition that improperly withholding funds for an extended period of time suffices to show injury. In fact, Section 9 of General Laws chapter 93A establishes an independent cause of action for "any person whose rights are affected" by an insurer's violation of c.176D, §3(9). G.L.c.93A, §9; *Van Dyke v. St. Paul Fire and Marine Ins. Co.*, 388 Mass 671, 675 (1983).

Plaintiffs were forced to bring this DJ action because defendants Scottsdale and Utica would not.[4]

---

[4] "As a practical matter . . . in the event an insurance company believes that there is no coverage, it should do one of two things. It should either (a) attempt to stay the [underlying tort] action against the insured and institute a

9

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the defendants' motion to dismiss and remand on abstention grounds. Alternatively, if the Court is inclined to retain jurisdiction over this declaratory judgment action, the Plaintiffs respectfully request that the action proceed and not be stayed.

                Respectfully submitted,

                JUANA HERNANDEZ and
                ARMANDO MAISONET
                By their attorneys,

                /s/ Robert H. Beadel
                _____

                Hector E. Pineiro BBO # 555315
                Robert H. Beadel BBO #632447
                807 Main Street
                Worcester, MA 01610
                Tel. (508) 770-0600
                Fax (508) 770-1300
                Email: h.pineiro@att.net

Dated: December 2, 2005

---

declaratory judgment action, or (b) settle the action against the insured subject to a reservation of rights to seek indemnification from the insured." A.D. Windt, Insurance Claims and Disputes § 5.05, at 311-312 (3d ed. 1995).

CERTIFICATE OF SERVICE

I, Robert H. Beadel, hereby certify that a true and accurate copy of the foregoing document was served by first-class mail, postage prepaid, on this 2nd day of December, 2005 upon:

Caryn L. Daum, Esq.
Robinson & Cole LLP
One Boston Place
Boston, MA 02108

James T. Scamby
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUANA HERNANDEZ AS ADMINSTRATRIX OF THE ESTATE OF DANNY NICACIO and ARMANDO MAISONET,<br>        Plaintiffs<br><br>v.<br><br>SCOTTSDALE INSURANCE COMPANY and UTICA MUTUAL INSURANCE COMPANY,<br>        Defendants | ) <br>) <br>) CIVIL ACTION NO. 05-4041FDS <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) |

### AFFIDAVIT OF HECTOR E. PINEIRO

1. I am an attorney duly licensed to practice before all courts of Massachusetts.

2. The actual Kahr weapon that Cronin constructed of component parts was identified through ballistics by the Worcester Police Department s the same weapon used to shoot both plaintiffs, according to documents provided plaintiffs by the City.

3. Plaintiffs have standing to bring this declaratory judgment action under c.231A, because the $500,000-$550,000 remaining in General Star's eroding policy [information provided me by Kahr's counsel] is not sufficient to compensate plaintiffs for their death and disability.

4. After a careful reading, neither Scottsdale's nor Utica's policy of insurance appears to be an excess policy.

12

5. A demand letter was submitted to Scottsdale under the tenets of 93A on October 24, 2003, claiming Scottsdale was in violation of 93A because of its failure to make any offer of settlement once liability had became reasonably clear.

6. A demand letter was submitted to Utica Mutual under the tenets of 93a on March 1, 2004, claiming Utica was in violation of 93A because of its failure to make any offer of settlement once liability had became reasonably clear.

7. Though the transcript from the latest iteration of the deposition of Mark Cronin was not available upon this writing, I represent that he and Scott Anderson each testified that, if Kahr had surveillance cameras or a metal detector, or an otherwise stricter security system, they would have thought twice about stealing component gun parts from Kahr's facility.  4/21/05 Dep. Scott Anderson, p. 44.

Sworn and subscribed under the pains and penalties of perjury this 29th day of November, 2005.        /s/ Hector E. Pineiro

_____

Hector E. Pineiro