UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUANA HERNANDEZ AS ADMINSTRATRIX OF THE ESTATE OF DANNY NICACIO, and ARMANDO MAISONET, <br> Plaintiffs <br><br> v. <br><br> SCOTTSDALE INSURANCE COMPANY and UTICA MUTUAL INSURANCE COMPANY, <br> Defendants | ) <br> ) <br> ) CIVIL ACTION NO. 05-40141FDS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PLAINTIFFS' FILING OF SURREPLY PAPERS FILED IN THE SUPERIOR COURT IN OPPOSITION TO DEFENDANTS' SUPERIOR COURT MOTION TO DISMISS

Pursuant to the Court's Order dated April 4, 2006, on *Plaintiffs' Motion for Leave to File Copy of The Surreply Papers In Opposition to Defendants' Motion to Dismiss*, Plaintiffs hereby file a copy of their Superior Court *Surreply*. The Motion to Dismiss is now scheduled to be heard by the Superior Court on May 10, 2006.

Plaintiffs also bring to the Court's attention that The Massachusetts Attorney General recently filed in the Superior Court its *amicus curiae* brief in support of Plaintiffs. Plaintiffs have refrained from producing said brief due to its length. In the event this Court wants to see a complete copy of the Massachusetts Attorney General's brief, Plaintiffs will forward it to this Court.

Respectfully submitted,

**Juana Hernandez and Armando Maisonet,**
By their Attorneys,

S/ Robert H. Beadel

_____
Hector E. Pineiro, Esquire, BBO # 555315
Robert H. Beadel, Esquire, BBO # 632447
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600

## CERTIFICATE OF SERVICE

I, Robert H. Beadel, hereby certify that, on this date, I served a copy of the foregoing document by first class mail on all recipients in the attached list.

James T. Scamby, Esquire
Tucker, Heifetz & Saltzman, LLP
Three School Street
Boston, MA 02108

John Steinmetz, Esquire
Caryn L. Daum, Esquire
Robinson & Cole LLP
One Boston Place
Boston, MA 02108

Dated: 4/5/06                    /s/ Robert H. Beadel

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.

WORCESTER SUPERIOR COURT
CIVIL ACTION NO. WOCV2002 - 01747
Session C

JUANA HERNANDEZ, ADMINISTRATRIX, et.al.

        Plaintiffs

v.

KAHR INC., et.al.,

    Defendants and

SAEILO, INC. D/B/A/ KAHR ARMS AND
AUTO ORDANCE CORP.,

    Defendant/Third Party-Plaintiff,

v.

TROPIGALA NIGHTCLUB, BEN MERCEDES,
30 DE MAYO, INC., and its successors in interest
and GERTRUDE LEVITSKY

      Third Party Defendants

## PLAINTIFFS' SURREPLY IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS

Hector E. Pineiro, Esquire, BBO # 555315
Robert H. Beadel, Esquire, BBO # 632447
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
Fax (508) 770-1300

Jonathan E. Lowy
Daniel R. Vice
Elizabeth S. Haile
Brady Center To Prevent Gun Violence
Legal Action Project
1225 Eye St. NW, Suite 1100
Washington, D.C. 20005
Tel. (202) 289-7319
Fax (202) 898-0059

John Vail
Robert Peck
Andre Mara
Center for Constitutional Litigation, P.C.
1050 31st St. NW
Washington, DC 20007
Tel. (202) 944-2887
Fax (202) 944-2887

# <u>TABLE OF CONTENTS</u>

<u>TABLE OF CONTENTS</u>…………………………………………………………...…..i

<u>TABLE OF AUTHORITIES</u>…………………………………………………………ii

<u>INTRODUCTION</u>…………………………………………………………….………..1

<u>ARGUMENT</u>……………………………………………………………...………….3

I.      KAHR'S MOTION MUST BE REJECTED BECAUSE IT TURNS ON A
        DISPUTE OF MATERIAL FACT………..…………………………….....3

II.     KAHR'S MOTION MUST BE DENIED BECAUSE THE ACT DOES NOT
        APPLY TO THIS CASE……………………………………………...………8

        A.  The Act Does Not Apply Because Even If Gun Parts Traveled In Interstate
            Or Foreign Commerce, Danny Was Killed With A Completed Gun That
            Did Not Travel In Such Commerce………………………………………….8

        B.  The Act Does Not Apply Because It Preserves Negligence Lawsuits..…10

        C.  The Act Does Not Apply To This Case Because Kahr Negligently
            Entrusted Its Firearm to Mark Cronin…………………………………...17

III.    IF INTERPRETED AS KAHR SUGGESTS, THE ACT IS
        UNCONSTITUTIONAL………………………………………………….…...20

        A.  The Act Violates The Tenth Amendment..……………………...……20

        B.  The Act Violates Separation of Powers…………………………...…23

        C.  The Act Violates Plaintiffs' Right of Access To The Courts, and The Due
            Process and Takings Clauses………………………………….……...24

        D.  The Act Violates The Equal Protection Clause…………………….....28

<u>CONCLUSION</u>………………………………………………………………….……..30

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Addison v. Williams*, 546 So. 2d 220 (La. Ct. App. 1989)....................................................13

*Anzalone v. Town of Middleton*, 63 Mass. App. Ct. 1116 (2005)........................................6

*Armijo v. Ex Cam, Inc.*, 656 F.Supp. 771, 773 (D.N.M. 1987) ...........................................13

*Bacon v. Texaco, Inc.*, 503 F.2d 946 (5th Cir. 1974).........................................................10

*Burkett v. Freedom Arms, Inc.*, 704 P.2d 118 (1985) .......................................................13

*Burlington N. Ry. Co. v. Ford*, 504 U.S. 648 (1992) ........................................................29

*Capodilupo v. Petringa*, 5 Mass. App. Ct. 893 (Mass. App. Ct. 1977)...............................6

*Caveny v. Raven Arms Co.*, 665 F.Supp. 530 (S.D. Ohio 1987) ........................................13

*Cipollone v. Liggett Grp.*, 505 U.S. 504 (1992) ...............................................................24

*Clark-Aiken Co. v. Cromwell-Wright Co., Inc.*, 367 Mass. 70 (1975) ..............................14

*In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982
   (9th Cir. 1987)............................................................................................................27

*Copier By and Through Lindsey v. Smith & Wesson Corp.,* 138 F.3d 833
   (10th Cir.  1998)...........................................................................................................13

*Coulson v. DeAngelo*, 493 So.2d 98 (Fla. Dist. Ct. App. 1986) ........................................13

*CSX Transp. v. Easterwood*, 507 U.S. 658 (1993) ...........................................................24

*Delahanty v. Hinckley*, 564 A.2d 758 (D.C. 1989)............................................................13

*Duke Power v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59 (1978) .....................27, 28

*Geier v. Am. Honda Motor*, 529 U.S. 861 (2000).............................................................24

*Gomes v. Metropolitan Property & Cas. Ins. Co.*, 45 Mass. App. Ct. 27
   (Mass. App. Ct. 1998).................................................................................................6

*Hammond v. United States*, 786 F.2d 8 (1st Cir. 1986)..............................................26, 27

*HTA Ltd. Partnership v. Mass. Turnpike Auth.*, 51 Mass. App. Ct. 449
   (Mass. App. Ct. 2001).................................................................................................4

*Johnson v. United States*, 529 U.S. 694 (2000) ................................................................15

*Kelley v. R.G. Industries, Inc*., 497 A.2d 1143 (Md. 1985)................................................13

*Knott v. Liberty Jewelry and Loan, Inc*., 748 P.2d 661 (Wash. Ct. App. 1988)...............13

*Lewis v. Lewis*, 351 N.E.2d 526 (Mass. 1976)...........................................................25, 26

*Logan v. Zimmerman Brush Co*., 455 U.S. 422 (1982) ....................................................26

*Marbury v. Madison*, 5 U.S. 137 (1803).....................................................................24, 25

*Martin v. Harrington and Richardson, Inc*., 743 F.2d 1200 (7th Cir. 1984)....................13

*Martinez v. California*, 444 U.S. 277 (1980)....................................................................26

*McCallum v. City of Athens, GA*., 976 F.2d 649 (11th Cir. 1992)......................................9

*Midland States Life Ins. Co. v. Cardillo*, 59 Mass. App. Ct. 531 (Mass. App. Ct. 2003) ...5

*Missouri Pac. Ry. Co. v. Humes*, 115 U.S. 512 (1885).....................................................25

*Second Employers' Liability Cases (Mondou v. New York, N.H. & H.R. Co*.),
   223 U.S. 1 (1912).........................................................................................................21

*Moore v. R.G. Industries, Inc*., 789 F.2d 1326 (9th Cir. 1986)........................................13

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950) .............................26

*Nader v. Citron*, 372 Mass. 96 (1977) ..........................................................................4, 5

*National Labor Relations Board v. Fruit and Vegetable Packers and
   Warehousemen, Local* 760, 377 U.S. 58 (1964) ..................................................... passim

*New York v. United States*, 505 U.S. 144 (1992) ............................................................21

*New York Central R.R. v. White*, 243 U.S. 188 (1917)....................................................21

*New York State NOW v. Pataki*, 261 F.3d 156 (2d Cir. 2001)..........................................25

*Nichols v. Hopper*, 173 F.3d 820, 823 (11th Cir. 1999) .............................................23, 24

*Perkins v. F.I.E. Corp*., 762 F.2d 1250 (5th Cir. 1985).....................................................13

*Plaut v. Spendthrift Farm, Inc*., 514 U.S. 211 (1995).......................................................23

*Poskus v. Lombardo's Randolph, Inc.*, 423 Mass. 637 (1996) ..........................................19

*Reno v. Condon*, 528 U.S. 141 (2000) ...............................................................21

*Richardson v. Holland*, 741 S.W.2d 751 (Mo. Ct. App. 1987) ........................................13

*Riordan v. International Armament Corp.*, 477 N.E.2d 1293  (Ill. 1985) .........................13

*Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992)...........................................23

*S & M Materials Co. v. Southern Stone Co.*, 612 F.2d 198 (5th Cir. 1980) .....................10

*Schneider v. United States*, 27 F.3d 1327, 1333 (8th Cir. 1994) .....................................26

*Schwegman Bros. v. Calvert Distillers Corp.,* 341 U.S. 384 (1951) ........................ passim

*Shipman v. Jennings Firearms, Inc.*, 791 F.2d 1532 (11th Cir. 1986).............................13

*Silver v. Silver*, 280 U.S. 117 (1929) ................................................................28

*Strickland v. Fowler*, 499 So.2d 199 (La. Ct. App. 1986) ...................................13

*Truax v. Corrigan*, 257 U.S. 312 (1921).............................................................25

*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478 (1988)....................25

*United States v. Great Northern Ry. Co.*, 287 U.S. 144 (1932).........................................12

*United States v. Missouri Pacific R.R. Co.*, 278 U.S. 269 (1929) ....................................12

*United States v. Price*, 361 U.S. 304 (1960)........................................................16

*Union Pac. R. Co. v. Botsford*, 141 U.S. 250 (1891).........................................25

*United States v. Corey*, 207 F.3d 84 (1st Cir. 2000).........................................9

*United States v. Travisano*, 724 F.2d 341 (2d Cir. 1983) ..................................9

*Usery v. Turner-Elkhorn*, 428 U.S. 1 (1976) .....................................................29

*Wilson v. Gunn*, 403 F.3d 524 (11th Cir. 2005)...................................................26

*Zavala v. United States*, 876 F.2d 780 (9th Cir. 1989) .....................................26

Statutes and Legislative Materials

151 Cong. Rec. S9099 (July 27, 2005)...................................................................15

151 Cong. Rec. S9077 (July 27, 2005)............................................................10, 15

151 Cong. Rec. S9313 (July 28, 2005)...................................................................17

151 Cong. Rec. S9395 (July 29, 2005)....................................................................2

15 U.S.C. § 7901 ............................................................................................ passim

15 U.S.C § 7903 ............................................................................................. passim

18 U.S.C. § 1709............................................................................................20

H.R. Rep. No. 109-124 ....................................................................................24

Mass. R. Civ. Pro. 12(b)..................................................................................6

Mass. R. Civ. Pro. 56(f) ............................................................................. passim

Mass Gen. Laws Ann., Const. Pt. 2, C. 6, Art. 6...........................................17

Secondary Sources

Restatement (Second) of Torts § 288B, Cmt. B (1965). ..............................14

Alexander Hamilton, The Federalist, No. 78.............................................23

# COMMONWEALTH OF MASSACHUSETTS

WORCESTER, SS.                          WORCESTER SUPERIOR COURT
                                        CIVIL ACTION NO. WOCV2002 - 01747
                                        Session C

JUANA HERNANDEZ, ADMINISTRATRIX, et.al.

        Plaintiffs

v.

KAHR INC., et.al.,

    Defendants

    and

SAEILO, INC. D/B/A/ KAHR ARMS AND
AUTO ORDANCE CORP.,

    Defendant/Third Party-Plaintiff,

v.

TROPIGALA NIGHTCLUB, BEN MERCEDES,
30 DE MAYO, INC., and its successors in interest
and GERTRUDE LEVITSKY

    Third Party Defendants

## PLAINTIFFS' SURREPLY IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

When Kahr's Reply brief is stripped of its unsupported assertions, misapplied "authority", responses to "straw man" arguments Plaintiffs never made, and even attacks on counsel, it ends up essentially conceding that this Court must deny the motion to dismiss. For one, Kahr relies on an appended affidavit and documentation which is outside the complaint and has not been subjected to cross-examinational scrutiny or discovery. This concedes that the Motion to Dismiss cannot be granted based solely on the pleadings, and that additional discovery is needed.

1

Nor are Kahr's arguments persuasive.  Kahr argues that the Commerce in Arms Act ("CAA" or "Act") bars this and other state courts from applying state common law to gun companies, contending that negligent gun companies are now shielded from common law liability despite the Act's text and its sponsors' explicit and repeated statements that the Act does not protect negligent gun companies.  Kahr does not explain what the Act's "author," chief sponsor, and legislative champion, Senator Larry Craig, could have meant when he stated on the Senate floor, "This bill will not prevent a single victim from obtaining relief for wrongs done to them by anyone in the gun industry."  151 CONG. REC. S9395 (July 29, 2005).  While Kahr refers to such statements as "snippets," the record is replete with them.  *See* Plf. Opp. Memo. at 8-12.  The only logical way to read the Act is barring cases seeking to impose liability on gun companies when they did nothing wrong, while preserving common law actions such as this one.  That is what the Act says, and that is what the sponsors said it meant.

Kahr also repeatedly asserts that plaintiffs' construction renders the Act "meaningless." Def. Rep. at 11-13.  This is utterly untrue.  The Act bars precisely the cases its sponsors intended to bar:  cases "based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and [that] do not represent a bona fide expansion of the common law."  15 U.S.C. § 7901(a)(7).  To "rebut" the overwhelmingly clear statements of the statutory text and the Act's sponsors, Kahr relies mostly on the statements of opponents, even though the Supreme Court has made clear that, "[i]t is the *sponsors* that we look to when the meaning of the statutory words is in doubt."  *National Labor Relations Board v. Fruit and Vegetable Packers and Warehousemen, Local 760*, 377 U.S. 58, 66 (1964) (emphasis added), quoting *Schwegman Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 394 (1951); *Schwegmann*

*Brothers*, 341 U.S. at 394 ("The fears and doubts of the opposition are no authoritative guide to the construction of legislation.").

Plaintiffs' reading of the Act is the only logical way to read its provisions and the sponsors' statements. Under the Act's initial definition of "qualified civil liability action," as well as the Act's findings and purposes, the Act prohibited actions in which liability was sought to be imposed on non-tortious gun companies, where the sole cause of the injury was the unlawful act of a third party. While this initial definition preserves traditional negligence cases, Congress created additional "exceptions" in the Act to preserve certain cases that are not traditional common law actions – contract, warranty, product liability, negligence per se, negligent entrustment, and statutory violations. While this is a logical, consistent explanation of the Act, Kahr's explanation – that Senators repeatedly stated that the Act preserves "negligence" cases when they meant "non-negligence" cases – makes no sense.

Kahr also ignores the fact that if the Act is interpreted as Kahr suggests, to require state courts to dismiss valid state tort actions and immunize gun manufacturers from their own negligent conduct, it raises overwhelming constitutional problems that require that the Act be struck down as unconstitutional.

## **ARGUMENT**

## I.  **KAHR'S MOTION MUST BE REJECTED BECAUSE IT TURNS ON A DISPUTE OF MATERIAL FACT.**

On November 3, 2005, Kahr moved to dismiss for failure to state a claim or for judgment on the pleadings, claiming that a new federal law required dismissal of this case. The next day, Kahr rushed to file a motion for an "emergency" stay of all discovery. Kahr claimed that because its motion must be decided on the pleadings and without resort to factual evidence, to allow any discovery would "waste the resources of both the Court and the parties." Kahr Motion

at 2.  Kahr's motion prevented the imminent deposition of its Branch Manager, Soji Wada, and

other employees.  *See* Rule 56(f) Affidavit of Daniel R. Vice at ¶¶ 5-7; Notice of Deposition of

Mr. Wada for Nov. 22, 2005 (Exh. 1).  The court granted a stay of all discovery except for a

previously ordered facility inspection.

Kahr claimed that the newly enacted CAA required dismissal of this case.  However, the

Act only applies to certain firearms-based cases where a "qualified product" that caused an

injury "has been shipped or transported in interstate or foreign commerce."  15 U.S.C. § 7903(4).

This is a fundamental threshold requirement, as Congress based its authority to enact this law on

its Constitutional power to regulate *interstate* commerce, and so limited the reach of the law only

to products that have traveled in such commerce.  *See* Kahr Reply ("Def. Rep.") at 28.  Thus, a

preliminary factual question is whether the product in this case – the Kahr gun – in fact crossed

state lines.  It did not.  The gun at issue here was assembled, sold and used to shoot Danny

Guzman all within the confines not only of the State of Massachusetts, but also within the City of

Worcester.  Not only did the gun never leave the state; it never even left the city.[1]

Further, the Plaintiffs' complaint, which is deemed as true, makes clear that the "qualified

product" that caused harm in this case was a completed and operational Kahr Arms handgun that

never left Worcester.  The complaint states that Kahr "did keep the handgun components and

machinery necessary for production and shipment of finished Kahr handguns" in its Worcester

facilities "and at no other place."  Amended Complaint ("Compl.") at ¶ 39.  The complaint

---

[1] Plaintiffs present the facts as alleged in the complaint, because Kahr moved to dismiss under
Rules 12(b)(6) and 12(c), and so the Court must take the "allegations of the complaint, as well as
such inferences as may be drawn therefrom in the plaintiff's favor."  *HTA Ltd. Partnership v.
Mass. Turnpike Auth.*, 51 Mass. App. Ct. 449, 451 (Mass. App. Ct. 2001), quoting *Nader v.
Citron*, 372 Mass. 96, 98 (1977).

explains that, due to Kahr's negligent security practices, Mark Cronin, a Kahr employee with a criminal history and drug addiction, took a firearm from Kahr's Worcester plant. *See id.* ¶ 81. Cronin, then "introduced the 9 millimeter handgun into the stream of commerce" "at a Worcester residence," and the gun was used to shoot Danny Guzman on Main Street in Worcester. *Id.* ¶¶ 71, 81, 82.[2] Even Kahr does not claim that its handgun traveled across state lines – in fact, it states that firearm parts left its Worcester plant before the product was even manufactured into a complete firearm. *See* Kahr Motion at 9. Based on the pleadings and Kahr's admission, it is clear that the gun only entered the stream of commerce in Worcester and never left the city, so the CAA does not apply.

In Kahr's attempt to resolve the dispute of material fact raised by its motion of whether the firearm traveled in interstate or foreign commerce, it audaciously argues that the Court should decide the motion *on the pleadings* based on selected evidence hand-picked by Kahr and presented for the first time in its reply brief. Kahr makes this claim despite its initial assurance to the Court that the motion would be decided on the pleadings, so that discovery should be ground to a halt. Kahr thus attaches the self-serving affidavit of Soji Wada, the same Branch Manager who Kahr shielded from a deposition that was imminent before Kahr moved for an emergency stay of discovery. *See* Def. Rep. Exh. 1. Kahr claims that Mr. Wada's statements, now unchallenged by any discovery that could have probed the veracity of his claims, "settle the issue" of fact raised by Kahr's motion for judgment on the pleadings. Def. Rep. Motion at 5.[3]

---

[2] The Amended Complaint inadvertently contains two paragraphs numbered 81. This cite is to the second such paragraph.

[3] Kahr also improperly attempts to shift its burden of proof on its motion to plaintiffs, suggesting that plaintiffs be required to plead and prove why this case should not be dismissed under the Act. *See* Def. Rep. at 25. Of course, defendant bears the burden of proof on its motion, not
Continued…

Kahr should not be permitted to use its assurance to the Court that discovery would "waste the resources of both the Court and the parties" on a motion for judgment on the pleadings to then rely on the very same factual evidence that plaintiff was blocked from probing in discovery.  Further, it is baffling why Kahr, though well aware of the threshold interstate commerce requirement of the CAA, waited to present this "evidence" until its reply brief.

The Rules of Civil Procedure make clear that on a motion to dismiss for failure to state a claim, if:

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

MASS. R. CIV. PRO. 12(c).  Further, "'a party is entitled to notice that a court intends to treat a rule 12(b)(6) motion as a motion for summary judgment and to an opportunity to present further material and be heard.'"  *Gomes v. Metropolitan Property & Cas. Ins. Co.*, 45 Mass. App. Ct. 27, 32 (Mass. App. Ct. 1998), quoting *Capodilupo v. Petringa*, 5 Mass. App. Ct. 893, 894 (Mass. App. Ct. 1977) Rule 56 further provides that if a party introduces evidence on a Rule 12(b)(6) or 12(c) motion, "the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."  MASS. R. CIV. PRO. 56(f).  *See also Anzalone v. Town of Middleton*, 63 Mass. App. Ct. 1116, 1116 (2005) ("the judge's consideration of materials outside of the pleadings converted the defendant's rule 12(b)(6) motion into a motion for summary judgment,"

---

plaintiffs.  *See, e.g., Midland States Life Ins. Co. v. Cardillo*, 59 Mass. App. Ct. 531, 536, (Mass. App. Ct. 2003), citing *Nader v. Citron*, 372 Mass. 96, 97-98 (1977).

so "the judge should have afforded the plaintiff the opportunity to submit countervailing rule 56

materials and honored his request for discovery").

Plaintiffs have attached an affidavit pursuant to Rule 56(f) explaining the need for

discovery to respond to material facts Kahr has introduced in support of its motion for judgment

on the pleadings.  For example, in discovery, plaintiffs will inquire:

- why the invoices that Mr. Wada claims show that a gun part traveled in interstate commerce have a "ship to" address but no "ship from" address showing that the part actually did cross state lines.

- why Mr. Wada's claims that Saeilo Manufacturing Industries ("SMI") "manufactured … ship[ped] and transport[ed]" gun slides from New York, when SMI's website claims that its parts are in fact manufactured in Worcester, and do not list any manufacturing facilities in New York.

- why some of the gun parts supposedly manufactured at SMI in New York are listed on the attached invoices as "Production, HT *at Kahr*."  (emphasis added)

- why Mr. Wada is personally listed as the Worcester contact *for SMI* on SMI's website with a Worcester telephone number if, as he claims, SMI manufactures and ships products from New York.

- why Mr. Wada failed to disclose in his affidavit his apparent employment for both Kahr and SMI in Worcester.

- why if, as Mr. Wada claims, SMI manufactured gun parts in New York and not in Massachusetts "[f]rom 1996 to 2000," in 1999 the Worcester Polytechnic Institute hosted a "real-world" manufacturing engineering project for SMI, allowing students in Worcester to follow SMI's "manufacturing process from raw material to finished product."

- why Mr. Wada baldly asserts that a "vast majority" of Kahr's handgun parts travel in interstate commerce, when the only example he lists is one part, the gun's slide.

*See* Vice Affidavit ¶ 19.  Once the answers to these questions are obtained from Mr. Wada,

Kahr, and other relevant parties, plaintiffs will undoubtedly have many additional questions

based on Mr. Wada's responses and documents requested by plaintiffs from by Kahr.  These

examples demonstrate the need for discovery pursuant to Rule 56(f) to probe the veracity of Mr.

Wada's claims concerning disputed material questions of fact – discovery that had been imminent and was halted only after Kahr assured that court that it was unnecessary on a motion for judgment on the pleadings.

Kahr's motion to dismiss must be denied as the pleadings do not support that the product that caused harm to plaintiffs traveled in interstate or foreign commerce, a threshold requirement of the Act.

## II.    KAHR'S MOTION MUST BE DENIED BECAUSE THE ACT DOES NOT APPLY TO THIS CASE.

### A.    The Act Does Not Apply Because Even If Gun Parts Traveled In Interstate Or Foreign Commerce, Danny Was Killed With A Completed Gun That Did Not Travel In Such Commerce

In the alternative, this Court may disregard Kahr's factual submissions and deny Kahr's motion because the Act does not apply even if gun parts in fact traveled in interstate or foreign commerce.[4]

Danny Guzman was injured by a completed and operational handgun, not by a gun part, and there is no dispute that the completed gun did not travel in interstate or foreign commerce. The Act only applies to cases seeking "damages . . . or other relief, resulting from the criminal or unlawful misuse of a qualified product" and requires that the "qualified product" that caused the injury must have "been shipped or transported in interstate or foreign commerce."  15 U.S.C. § 7903(4), (5)(A).  The "qualified product" in this case is a completed firearm, not a gun part. Plaintiffs have not brought any claim suggesting that Danny was killed by a gun part, such as a

---

[4] While Kahr asserts that "it is undisputed that the CAA applies if only one component part traveled in interstate or foreign commerce," Def. Rep. at 4-5, this is utterly untrue.  Further, as explained below, such an interpretation would be contrary to a host of federal cases limiting the application of federal statutes to *finished products* that have crossed state lines.

product liability claim based on a malfunction of an individual component part of the firearm. Where plaintiffs' death was caused by a completed product, the assembled and completed firearm itself must have traveled in interstate or foreign commerce, as that was the "qualified product" that caused harm to plaintiffs.

Here, plaintiffs allege and Kahr does not dispute that the completed firearm has not traveled in interstate commerce. Rather, it has spent its entire life in the City of Worcester. Indeed, Kahr essentially conceded that the handgun had *not* traveled in such commerce, stating that its employee Mark Cronin "stole a frame *during* the manufacturing process" at its plant in Worcester. Kahr Motion at 5. Thus, according to Kahr, the finished product was apparently manufactured in Worcester after Mr. Cronin took it from Kahr's plant, and it was then used to shoot and kill Danny in Worcester – it clearly never traveled in interstate or foreign commerce.

Courts interpreting statutes requiring even a "minimal nexus" to interstate commerce have found that a firearm must be manufactured in order to have traveled in interstate commerce. *See, e.g., United States v. Travisano*, 724 F.2d 341, 347-48 (2d Cir. 1983); *United States v. Corey*, 207 F.3d 84, 88 (1st Cir. 2000) ("the 'interstate nexus' element was met provided the government demonstrated that Corey possessed the shotgun in a state other than the one in which it was manufactured."). Likewise, with other products, courts have held that it is irrelevant whether component parts travel in interstate commerce – the final product itself that is the subject of the cause of action must have traveled in interstate commerce.

Thus, in *McCallum v. City of Athens, Ga.*, 976 F.2d 649 (11th Cir. 1992), the court analyzed whether processed water had traveled in interstate commerce for purposes of invoking a federal statute concerning anticompetitive behavior. The water had been manufactured with added chlorine and fluoride that had traveled across state lines, but the final product itself – the

treated water – did not enter interstate commerce.  The court noted that "the chlorine and fluoride that [defendant] Athens purchases from out-of-state suppliers are ingredients of the final product that Athens sells, treated water," yet the court "reject[ed] the proposition that interstate purchases of ingredients constitute sufficient interstate commerce to support . . . claims arising out of purely intrastate sales of the final product."  *Id.* at 657.  Rather, there must be "physical movement of the *relevant product* across a state line."  *Id.* at 656, quoting *S & M Materials Co. v. Southern Stone Co.*, 612 F.2d 198, 200 (5th Cir.1980) (emphasis in original).  Likewise, in *Bacon v. Texaco, Inc.*, 503 F.2d 946 (5th Cir. 1974), the court held that "[n]o 'flow of commerce' ever took place" with respect to the finished product because "the interstate movement of mere ingredients (does not) suffice," and so rejected the invocation of a federal price discrimination statute.  *Id.* at 948 & n. 4, quoting *Scranton Constr. Co. v. Litton Indus. Leasing Corp.*, 494 F.2d 778, 781 (5th Cir. 1974).  *See also Scranton Const. Co.*, 494 F.2d at 781 ("though ingredients which had traveled interstate, such as cement, were involved, . . . 'all the interstate ingredients were mixed together within the confines of Pascagoula, Mississippi, and delivered to Litton there.'  This is fatal [to a claim that the product moved in interstate commerce].").

There can be no doubt that Danny Guzman was not killed by a lone gun part.  He was killed by a completed gun that could fire ammunition, and it is undisputed that this final product did not travel in interstate or foreign commerce as required to invoke the Act.

### B.    The Act Does Not Apply Because It Preserves Negligence Lawsuits

[T]his bill carefully preserves the right of individuals to have their day in court
with civil liability actions where negligence is truly an issue . . .

– Senate Sponsor Orrin Hatch, 151 CONG. REC. S9077 (July 27, 2005)

Kahr claims that the Act must be read to bar negligence cases such as this, despite the text of the Act and unequivocal statements by the Act's sponsors on the floor of the U.S. Congress repeatedly stressing that such cases would be preserved. Even though the Act makes clear that it only bars lawsuits seeking to hold gun companies liable for harm "solely caused by" criminals, Kahr argues that this court should judicially delete the word "solely" from all parts of the Act and asks this Court to rewrite the Act to bar cases for harm "caused by *any* criminal misuse and notwithstanding negligent conduct by gun manufacturers." This Court, of course, cannot ignore the explicit statements of Congress both in the text of the statute and during the Act's debate specifically preserving common law negligence claims. While Kahr may not be pleased that it can be held liable if a plaintiff proves that it acted negligently and was a cause of a plaintiff's injuries, it simply may not rewrite the law in the courts after having failed to receive what it wanted in Congress.

In order for a claim involving a "qualified product" to fall under the Act, it must first meet the definition of a "qualified civil liability action." As plaintiffs explain above, the firearm in this case is not a "qualified product" because it did not travel in interstate or foreign commerce. Nonetheless, even if this case involved a "qualified product," the Act only applies to cases involving harm "resulting from the criminal or unlawful misuse" of a firearm. The term "resulting from" is not defined in the Act, but its meaning is clear from its context in the statute, which specifies that it bars cases where a criminal "solely caused" plaintiffs' injury. *See* 15 U.S.C. §§ 7901(a)(6), (b)(1). This reading of the Act is unambiguous. Kahr's reading of the Act, however, would contradict the findings and purposes of the Act that state that the Act shields gun companies only where the injury was "solely caused" by a criminal, and that refer to prohibited cases as those not based on common law.

11

The Act *twice* explicitly states that it only concerns cases where the harm to plaintiff was "solely caused by" a criminal, 15 U.S.C. § 7901(a)(6), (b)(1), and cases "without foundation in hundreds of years of the common law and jurisprudence of the United States," 15 U.S.C. § 7901(a)(7), not cases based on one of the most fundamental theories of the common law – negligence. Kahr's suggestion that the Act's statutory language contradicts the Act's own express purposes and findings at the very least requires a finding that the Act's text is ambiguous. Thus, either plaintiffs' facial reading of the Act must be accepted or, if this Court determines that the Act is ambiguous, it may look to the legislative history to discern its meaning. *See, e.g., United States v. Great Northern Ry. Co.*, 287 U.S. 144, 154-55 (1932), citing *United States v. Missouri Pacific R.R. Co.*, 278 U.S. 269, 278 (1929) (if statutory term is uncertain, "[we] have recourse to the legislative history of the measure and the statements by those in charge of it during its consideration by the Congress."). As plaintiffs have shown, the legislative history confirms the meaning conveyed by the statutory text that negligence cases are preserved.[5]

Kahr hinges its argument that negligence cases against it are barred not on the statutory language or the words of the sponsors, but on its "sky is falling" fear that if it can be sued for its negligent conduct it "would render the Act a dead letter." Def. Rep. at 11. The contrary is true: to bar a negligence suit despite Congress's clear intent to preserve such suits would render the Act "a dead letter." To effectuate the intent stated in the Act is not "meaningless" as Kahr

---

[5] Kahr attempts to cloud the issue by acknowledging that the court must decide the meaning of "resulting from the criminal or unlawful misuse," but then stating that "unlawful misuse" is defined in the Act and "[n]owhere does one find the word 'solely.'" Def. Rep. at 10. Of course, the question presented here is the meaning of "resulting from" not "unlawful misuse," and "resulting from" in the Act clearly means "*solely* caused by" *as Congress stated twice in the Act*. *See* 15 U.S.C. §§ 7901(a)(6), (b)(1) (emphasis added).

claims.  Rather, the Act protects the gun industry against claims that attempt to stretch the

common law to hold gun or ammunition manufacturers strictly liable simply because their

product was used in crime without proof that the manufacturer was negligent.  Congress

determined that that such claims propose an "expansion of liability" *beyond* the common law and

thus barred these claims.  Contrary to Kahr's suggestion that "no manufacturer or distributor

would be a party" to such a case, numerous such claims that have been brought and rejected by

the courts,[6] and Congress can be deemed cognizant of them.

    While Kahr asserts that the exceptions to the Act would be "rendered meaningless" if

Kahr could be held liable for its own negligent conduct, Def. Rep. at 11, this ignores the entire

text and structure of the Act, which first allows common law negligence claims while prohibiting

claims holding gun makers strictly liable for crimes "solely caused by" criminals, and then lists

six exceptions that are still allowed to continue even though they are not based on traditional

---

[6] *See, e.g., Copier By and Through Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 834 (10th Cir. 1998) (rejecting claim that "since handguns are manufactured to injure or kill people, and since it is a statistical certainty that some handguns are actually used to injure or kill people, the handgun manufacturer should bear strict liability for the resulting damages"); *Delahanty v. Hinckley*, 564 A.2d 758 (D.C. 1989) (rejecting attempt to hold Saturday Night Special manufacturer strictly liable for gun that plaintiffs claimed had no "social utility"); *Addison v. Williams*, 546 So. 2d 220 (La. Ct. App. 1989), *writ denied*, 550 So. 2d 634 (La. 1989) and *writ denied*, 550 So. 2d 634 (La. 1989); *Caveny v. Raven Arms Co.*, 665 F.Supp. 530, 532-33 (S.D. Ohio 1987), *aff'd*, 849 F.2d 608 (6th Cir. 1988); *Knott v. Liberty Jewelry and Loan, Inc.*, 748 P.2d 661 (Wash. Ct. App. 1988); *Armijo v. Ex Cam, Inc.*, 656 F.Supp. 771, 773 (D.N.M. 1987), *aff'd*, 843 F.2d 406 (10th Cir. 1988); *Richardson v. Holland*, 741 S.W.2d 751, 753-54 (Mo. Ct. App. 1987); *Shipman v. Jennings Firearms, Inc.*, 791 F.2d 1532 (11th Cir. 1986); *Moore v. R.G. Industries, Inc.*, 789 F.2d 1326 (9th Cir. 1986); *Coulson v. DeAngelo*, 493 So.2d 98, 99 (Fla. Dist. Ct. App. 1986); *Strickland v. Fowler*, 499 So. 2d 199 (La. Ct. App. 1986), *writ denied*, 500 So. 2d 411 (La. 1986); *Perkins v. F.I.E. Corp.*, 762 F.2d 1250 (5th Cir. 1985), *reh'g denied*, 768 F.2d 1350 (5th Cir. 1985); *Riordan v. International Armament Corp.*, 477 N.E.2d 1293, 1298-99 (Ill. 1985); *Kelley v. R.G. Industries, Inc.*, 497 A.2d 1143, 1147-50 (Md. 1985); *Burkett v. Freedom Arms, Inc.*, 704 P.2d 118 (1985); *Martin v. Harrington and Richardson, Inc.*, 743 F.2d 1200 (7th Cir. 1984).

common law.  In support of its argument, Kahr asserts that in other states that allow negligence

per se claims based on a statutory violation, no plaintiff would ever bring a negligence per se

claim when a plaintiff "can simply allege ordinary negligence."  Def. Rep. at 12.  While Kahr

correctly states that negligence per se may require proof of the "violation of a statute that

prevents a particular harm to particular plaintiffs," the fact remains that plaintiffs in other states

do bring such claims, because they afford benefits that traditional negligence claims do not –

"the violation becomes conclusive on the issue of the actor's departure from the standard of

conduct required of a reasonable man, and so, without more, is negligence."  *See* RESTATEMENT

(SECOND) OF TORTS § 288B, Cmt. B (1965).  This benefit to plaintiffs is certainly not

"meaningless."

      Likewise, Kahr's claim that the Act would be "meaningless" if negligence claims were

allowed because plaintiffs would then have no reason to bring strict liability product defect

claims misunderstands strict liability law.  *See* Def. Rep. at 12-13.  A successful strict liability

case requires different proof than a traditional negligence case and in many cases may be far

easier to prove than negligence.  As the Massachusetts Supreme Judicial Court has explained:

> The fact that a case of strict liability also contains elements of negligence does not
> preclude the plaintiff from recovering on the basis of strict liability . . . . The distinction is
> basically one of proof in the particular circumstances. The plaintiff must decide whether
> it is more economic and feasible to establish negligence under appropriate pleadings, or
> to prove that the activity in question comes within the parameters of strict liability. The
> fact that a plaintiff chooses to go forward on one, or possibility both, of these theories
> does not undercut the existence or vitality of either.

*Clark-Aiken Co. v. Cromwell-Wright Co., Inc.*, 367 Mass. 70, 83-84 (1975).

      Kahr also draws the wrong conclusion from the fact that Congress stated that, for the

Act's strict liability exception, "where the discharge of the product was caused by a volitional act

that constituted a criminal offense, then such act shall be considered the *sole proximate cause* of

any resulting" injury.  15 U.S.C. § 7903(5)(A)(v) (emphasis added); Def. Rep. at 14.  This

statement strongly supports Congressional sponsors' statements that the Act allows negligence

suits but blocks actions "solely caused by" criminals unless one of six exceptions otherwise

allows suit.  Because some plaintiffs have sought to impose absolute liability on gun companies

under the guise of strict liability – where a gun had no defect but was used in crime, *see* note 6 –

Congress made clear that strict liability claims are limited to cases of accidental shootings

involving actual product defects, not deliberate "volitional act[s]" by criminals.  This

requirement in no way "leads to absurd results."  Def. Rep. at 15.  To the contrary, it upholds

Congressional intent that legal theories not based on the common law or the exceptions to the

Act be prohibited, while "[i]f manufacturers or dealers break the law or commit negligence, they

are still liable."  151 CONG. REC. S9099 (July 27, 2005) (statement of Senate Sponsor Larry

Craig).  Kahr's interpretation would simply read out of the statute the words "solely caused by"

criminal misuse, and replace them with "caused by any criminal misuse."  Rudimentary canons

of statutory construction do not permit such selective reading.[7]

Kahr also cites the legislative history of the Act, fundamentally misrepresenting the clear

and repeated statements of the Act's sponsors that it allows suits for common law negligence.

For example, Kahr claims that "neither [Senate sponsor] Senator Craig nor any other legislator

---

[7] Kahr also argues that the Court should ignore Congress's stated purpose in the Act of barring
cases alleging harm "solely caused by" criminals, by claiming that a court must presume that
Congress's use of slightly different language in the Act's definition section meant to effect the
exact opposite of the statute's stated purpose.  *See* Def. Rep. at 10-11.  Kahr's suggestion that
Congress meant to bar negligence suits when the Act's statement of purposes and its sponsors
repeatedly stated exactly the opposite would violate one of the most fundamental canons of
statutory interpretation that "'[n]othing is better settled, than that statutes should receive a
sensible construction, such as will effectuate the legislative intention, and, if possible, so as to
avoid an unjust or an absurd conclusion.'"  *Johnson v. United States*, 529 U.S. 694, 707 (2000),
quoting *In re Chapman*, 166 U.S. 661, 667 (1897).

states … that the CAA allows common law causes of action for negligence or nuisance." Def.

Rep. 16.  Nothing could be further from the truth.  As plaintiffs pointed out in their Opposition to

Kahr's motion, the Act's sponsors, including Senator Craig, *repeatedly and unequivocally* made

statements such as, "[T]his bill carefully preserves the right of individuals to have their day in

court with civil liability actions where negligence is truly an issue."   151 CONG. REC. S9077

(remarks of sponsor Sen. Hatch).  Plaintiffs cite numerous other Senate sponsors making similar

statements.  *See* Plf. Opp. at 9-11.[8]

Kahr also improperly relies heavily on statements by *opponents* of the legislation, *see*

Def. Rep. at 17, 18, 19, 20, 21, 23, 24, despite repeated holdings by the U.S. Supreme Court that

it is the sponsors of legislation that determine legislative history, and opponents are not reliable

indicators of legislative intent.  *See National Labor Relations Board v. Fruit and Vegetable*

*Packers and Warehousemen, Local 760*, 377 U.S. 58, 66 (1964); *Schwegman Bros. v. Calvert*

*Distillers Corp.*, 341 U.S. 384, 394 (1951).[9]  Moreover, Kahr attempts to discern meaning from

---

[8] In one example of a gross distortion of the record, Kahr cites Senator Craig's description of the exceptions to the Act and then claims that this is actually a "definition of manufacturer and seller negligence."  To the contrary, Senator Craig first stated that "[t]he bill affirmatively allows lawsuits brought against the gun industry when they have been negligent," and then explained the additional circumstances where suits are allowed under the Act's exceptions. Def. Rep. at 16.  How Kahr could interpret a statement from the bill's sponsor stating that negligence lawsuits are preserved as actually barring negligence cases is beyond imagination.

[9] For example, Kahr improperly cites the fears of bill opponents that Danny Guzman's case would be dismissed by the legislation.  *See* Def. Rep. at 19.  While Kahr found no sponsors in the Senate who referred to this case, it cites one House sponsor – a Florida Congressman – who opined that this case would be dismissed, but even he was apparently unwilling to so state on the House floor, instead only adding his thoughts in an "extension of remarks" submitted after debate on the bill.  *Id.*  Of course, there is absolutely no basis to infer that the Florida Congressman knew any of the facts regarding this case needed to actually determine if it was covered by the Act.  This court is certainly not bound by a Congressman's perhaps uninformed afterthought about this case, which is contradicted by the actual debate conducted in the House and Senate chambers and repeated statements of numerous sponsors about the scope of the Act.

Congress's failure to pass amendments to the legislation, ignoring the Supreme Court's admonishment that "non-action by Congress affords the most dubious foundation for drawing positive inferences." *United States v. Price*, 361 U.S. 304, 310-11 (1960).[10]  In sum, Kahr ignores the clear and repeated statements of the Act's sponsors, while hinging its arguments on the statements of the Act's opponents and the failure to enact amendments, both of which have been explicitly repudiated by our Nation's highest court as having any value in the analysis of legislative history.[11,12]

      **C.**    **The Act Does Not Apply To This Case Because Kahr Negligently Entrusted Its Firearm to Mark Cronin**

---

[10] One such amendment that Kahr improperly examines is the Reed amendment which could have allowed suits even if a criminal was the sole cause of harm.  Not surprisingly, the Act's sponsors opposed the amendment.  *See* CONG. REC. S9313 (July 28, 2005).

[11] Kahr also continues its personal attacks on one of plaintiff's counsel, Dennis Henigan, though after Plaintiffs pointed out that Kahr's central argument that his out-of-court opinions could not constitute "judicial admission," Kahr has simply abandoned that argument rather than defend it. Instead, Kahr opnes up entirely new lines of attack, insinuating that counsel has violated several ethical rules.  *See* Def. Rep. at 20-21.  Kahr also erroneously claims that Mr. Henigan and the Brady Center represent Armando Maisonet, when they only represent Danny Guzman.  *See* Kahr Maisonet Reply at 20.  Kahr's ethical attacks are bizarre, to say the least, as they suggest that Mr. Henigan failed to zealously represent his client when he testified against legislation that Kahr contends requires the immediate dismissal of his client's case.  The charge is even more bizarre considering the fact that partly in response to the statements of Mr. Henigan and other opponents, the Act's sponsors made clear that negligence cases such as this were not in fact barred, and, as a result, the sponsors denied that the Act is "immunity" legislation.

[12] In addition to Congress's preservation of common law negligence claims in the Act, plaintiffs' claims are also preserved by the Act's allowance of cases based on violations of state law, including Massachusetts' reception statute.  *See* MASS. GEN. LAWS ANN., CONST. Pt. 2, C. 6, Art. 6; 15 U.S.C. § 7903(5)(A)(iii).  In enacting the Act, Congress recognized that it was only prohibiting "theories without foundation in hundreds of years of the common law and jurisprudence of the United States."  15 U.S.C. § 7901(a)(7).  Negligence law was part of the common law prior to the Massachusetts Constitution and is preserved by statute in this State. The Act specifically excludes suits if they are preserved by statute, as this case is here.  *See id.* at § 7903(5)(A)(iii).

Yet again flouting the Rules of Civil Procedure, Kahr attempts to meet its burden of showing that the Act's negligent entrustment exception does not apply by relying on yet another disputed statement of fact. This time Kahr does not even bother with the pretense of submitting an affidavit to support its claim; instead it improperly asserts facts without any support in either the pleadings or extra-pleading attachments, and again does so for the first time in its reply brief.

The Act does not require the dismissal of claims for negligent entrustment, which is defined by Congress as:

> supplying . . . a qualified product by a *seller* for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(A)(ii), (B) (emphasis added). Here plaintiffs have alleged negligent entrustment, namely that Kahr supplied a handgun for use by its employee, Mark Cronin, when it knew or should have known that he would use it in a manner involving an unreasonable risk of injury. *See* Complaint ¶¶ 63-65, 81. This Court previously upheld the negligence claim against Kahr's motion to dismiss. *See* Order, April 4, 2003.

Kahr argues for the first time in its reply brief that the negligent entrustment exception does not apply because it is in fact not a "seller" subject to the exception. In support of this factual claim, it simply asserts that it "is so licensed" as a manufacturer and thus is not a "seller," with no citation to any evidence to support this claim. *See* Def. Rep. at 23. Of course, even if true this does not even prove that Kahr is not a seller, for it can be both a manufacturer and a seller of firearms. More to the point, plaintiffs' complaint specifically alleges that Kahr is a seller, as well as a manufacturer. *See* Compl. ¶ 31 (Kahr "did *manufacture and sell* handguns under the brand name of Kahr Arms"). On a motion for failure to state a claim or for judgment on the pleadings, this Court must accept plaintiffs' claims as true. Only once discovery is

conducted and both parties submit facts concerning Kahr's status as a dealer, importer and/or manufacturer, can this Court decide the issue of whether Kahr is a seller subject to the negligent entrustment exception. *See* Vice Affidavit at ¶¶ 23-24.

Blasting aside the canons of statutory interpretation yet again, Kahr also heavily relies on statements by the Act's opponents concerning the scope of the negligent entrustment exception. First of all, the text of this exception is clear and so the Court need not look at legislative history. Nonetheless, Kahr spends over a page citing statements from the Act's *opponents*, *see* Def. Rep. at 23-24, which the Supreme Court has repeatedly stated are irrelevant when interpreting a statute passed by a bill's supporters. *See, e.g., National Labor Relations Board*, 377 U.S. at 66. Indeed, Kahr can only find one quote from the Act's supporters during the entire floor debate on the bill, which makes an irrelevant point about the exception's applicability to a case concerning a gun dealer sale to a customer. *See* Def. Rep. at 23. This case concerns entrustment of a gun to an employee, a case clearly covered by the negligent entrustment exception.

Lastly, Kahr suggests that when it negligently entrusted deadly firearms to a known drug addict with a lengthy criminal history, it was actually "victimized" and is therefore somehow immune from liability for its conduct. *See* Def. Rep. at 24. To Plaintiffs, whose son was shot and killed with Kahr's gun, Kahr's claim that it is a "victim" are unconvincing. More essential, however, is that plaintiffs' allegations fit squarely within the negligent entrustment exception.[13] While Kahr asserts that if it had negligently entrusted its firearm to Cronin, then Cronin could

---

[13] Kahr also claims that thus court's dismissal of plaintiffs' negligent hiring claim somehow also defeats plaintiff's negligent entrustment claim. *See* Def. Rep. at 4. This is false. These claims have different standards of proof; indeed, a claim for negligent entrustment does not require and is certainly not dependent on whether the entrustor and entrustee had an employer-employee relationship or whether negligent acts were committed within the scope of one's employment.

not have been prosecuted for theft, Kahr cites no case law in support of this assertion.  *See* Def.

Rep. at 4.  Indeed, the Massachusetts Supreme Judicial Court has held the opposite.  *See Poskus*

*v. Lombardo's of Randolph, Inc.*, 423 Mass. 637, 639-40 (1996) ("liability may be imposed if a

defendant negligently failed to guard against the consequences of reasonably foreseeable

criminal conduct," so "[i]f a person negligently makes the theft . . . possible, it would be

reasonably foreseeable in certain circumstances that a third person could be harmed by the thief's

negligent operation of the stolen [item].").[14]  Thus, the Act does not apply because plaintiffs have

alleged a valid negligent entrustment claim.

### III.    IF INTERPRETED AS KAHR SUGGESTS, THE ACT IS UNCONSTITUTIONAL

#### A.  The Act Violates The Tenth Amendment

Kahr cannot explain how the Act's command to state judges to dismiss this state law case

comports with the Tenth Amendment.  Nor can it explain how Congress can permissibly dictate

to states that liability standards for "qualified" gun suits must be determined by state legislatures,

not state courts.  Kahr's only response to these fatal, unconstitutional flaws is to ignore them,

focus on straw man arguments not raised by the Plaintiffs, or play fast and loose with the

authority it cites.[15]

While Kahr suggests that Plaintiffs "ignore" Congress's powers under the Commerce and

Supremacy Clauses (Def. Rep. at 28), this misstates Plaintiffs' brief and is beside the point.   Of

---

[14] Clearly if someone takes an item negligently entrusted to them and fails to return it they can prosecuted for theft.  *See, e.g.,* 18 U.S.C. § 1709 (federal crime for postal employee to steal any item "entrusted to him").

[15] Kahr even misstates the premise of the Tenth Amendment, as it discusses "separation of powers" within the Tenth Amendment section of its brief.  Def. Rep. at 27.

course Congress has broad authority to legislate firearms commerce, and it may pre-empt state law.  However, it may not do so in a manner violative of the Constitution, such as by directing state judges to dismiss state law cases, restricting the jurisdiction of state courts, or allocating the lawmaking function of state governments – all of which the CAA does.  Indeed, the Supreme Court emphasized this in the very case Kahr cites, stating that "even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts."  *New York v. United States*, 505 U.S. 144, 166 (1992) (citations omitted).  *See also Reno v. Condon*, 528 U.S. 141, 149 (2000) (even where Congress has "legislative authority over the subject matter," statutes are invalid if they "violat[e] the principles of federalism contained in the Tenth Amendment.").

Kahr simply ignores the fact, raised in Plaintiffs' brief, that the Supreme Court has distinguished constitutionally permissible federal statutes that "involve congressional regulation of individuals" and merely create concurrent jurisdiction for federally-created actions, from unconstitutional statutes which "enlarge or regulate the jurisdiction of state courts, or to control or affect their modes of procedure," as the CAA does.  Pl. Br. at 28, quoting *Second Employers' Liability Cases (Mondou v. New York, N.H. & H.R. Co.),* 223 U.S. 1, 56 (1912).  The CAA clearly falls into the second, impermissible category, as it regulates the jurisdiction of state courts by commanding the dismissal of certain gun liability claims based on state law, and does not create a federal cause of action.  Nonetheless, Kahr misapplies precedent by relying on authority that merely refer to the first, permissible, type of statute, even though those cases are inapposite here since the CAA does not create a cause of action.  Kahr offers no authority to rebut Plaintiffs' actual argument – that Congress may not require state courts to dismiss claims based on state law that remains in full force, as does the CAA.

Kahr similarly dodges Plaintiffs' contention that the CAA impermissibly allocates states' lawmaking functions by dictating to states that their legislatures, not their courts, must establish gun liability standards. Kahr cannot dispute the fact that the CAA expressly allows liability to be imposed on gun companies whose knowing violation of an "applicable" statute proximately caused plaintiff's injury, yet it contends that identical actions are barred if the courts or common law have established the liability standard. Even under Kahr's proposed limitation of "applicable" statute to firearms laws, Kahr cannot deny that under the Act a gun company could be held liable if it knowingly violated a Massachusetts law that required, for example, gun companies to implement certain reasonable security measures to prevent theft of guns or gun parts, and stated that violation proximately caused an injury. However, if a court held that the identical conduct violated state law in the form of a common law tort, the CAA (according to Kahr) would prohibit the case. Kahr does not explain how the federal government can, consistent with the Constitution, restrict the machinery of state government in such a manner or declare which branch of government is the authoritative expositor of state law; instead, it attacks straw men, stating that the Act does not "require" states to pass such laws. While true, that is beside the point. The federal government simply has no business telling Massachusetts that if it wishes that gun companies be liable for the harm caused by their wrongful conduct, the legislature, not the courts, must set those standards.

Kahr also asserts that Congress has preempted state law, but that does not address the Act's Tenth Amendment flaw. And Kahr does not explain how Congress can invoke a federal policy to restrict gun litigation to "preempt" one branch of state government – the judiciary -- while allowing state legislatures to enact statutes utterly contrary to that policy. Yet that is what the CAA, undeniably, does. Kahr cannot point to any similar "preemption" regime, much less

one that has been upheld by the courts.  The only policy behind such a legislative scheme is to restrict state courts, and that is not permissible.

### B.    The Act Violates Separation Of Powers

Kahr argues that Congress may order this court to dismiss Plaintiffs' suit, even though this court has determined that Kahr may be liable under Massachusetts nuisance and negligence law, and that law remains in full force.   Kahr is incorrect.

Kahr contends that separation of powers principles only prevent Congress from directing Article III courts, but that Congress is free to invade the province of the judiciary in state courts such as this.  Kahr's suggestion that the Framers were not concerned with legislative interference with courts generally is incorrect; the Framers believed, generally, that "[t]he Legislature would be possessed of power to 'prescrib[e] the rules by which the duties and rights of every citizen are to be regulated, but the power of 'the  interpretation of the laws' would be 'the proper and peculiar province of the courts.'"  *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 222 (1995) (quoting THE FEDERALIST NO. 78 (Alexander Hamilton)); *see also* FEDERALIST NO. 78 (agreeing that "there is no liberty if the power of judging be not separated from the legislative and executive powers").  Neither *Plaut*, nor any of the other cases cited by Kahr turn on the existence of an Article III court.

Kahr next asserts that "The Act reflects a change in existing law," and therefore the rule in *Klein* is inapplicable.  Def. Rep. at 30-31.  The fallacy of this argument is exposed by the fact that Kahr never states *what* existing law is changed by the CAA.  This is wholly unlike the one case Kahr cites, in which Congress amended *the federal law on which the plaintiff based its suit*. *Robertson v. Seattle Audubon Society*, 503 U.S. 429, 437-41 (1992).  Similarly, the cases Kahr cites to argue that the CAA is not an impermissible "rule of decision" merely hold that

legislation that "amends the applicable law" is not a rule of decision. *Nichols v. Hopper*, 173 F.3d 820, 823 (11th Cir. 1999) and Def. Rep. at 33-34. By contrast, the "applicable law" on which this suit is based is Massachusetts common law, which Congress did not change.

The CAA is wholly unlike the permissible preemption statutes cited by the Government. In the cited conflict-preemption cases, Congress or federal agencies created new substantive standards that were expressly intended to supplant state tort schemes. *See Geier v. Am. Honda Motor*, 529 U.S. 861, 884-886 (2000) (federal passive-restraint car standards); *CSX Transp. v. Easterwood*, 507 U.S. 658, 673-676 (1993) (federal regulations establishing speed limit on railroad tracks); *Cipollone v. Liggett Grp.*, 505 U.S. 504, 516-20 (1992) (federal standards for cigarette labels). In the CAA, however, Congress did not create new standards that supplant state standards governing gun manufacturer liability; Congress has merely directed an outcome in "qualified" cases regardless of whether such cases are otherwise cognizable under state law.[16]

The CAA is simply a "rule of decision" that directs this court to dismiss cases that remain supported by existing Massachusetts law – and as such, it is prohibited by the rule in *Klein*.

### C. The Act Violates Plaintiffs' Right of Access To The Courts, and The Due Process and Takings Clauses

The gist of Kahr's arguments that the CAA's elimination of plaintiffs' case does not violate plaintiffs' right of access to the courts, or the due process or taking clauses, is that plaintiffs do not have a protected right to a pending lawsuit. Yet Kahr ignores, but cannot refute

---

[16] In fact, the legislative history specifically declares that it "makes no changes to existing law." H.R. REP. No. 109-124, at 41. In the face of this clear language from the legislative history, the government is relegated to relying on statements from Congressional *opponents* of the bill to bolster its preemption argument. (Gov't Br. at 7 and n.4.) Again, the Supreme Court has consistently emphasized that it is inappropriate to discern the legislative intent of a law on the basis of testimony from members of Congress who opposed it.

the authority that "'it is a settled and invariable principle . . . that every right, when withheld, must have a remedy, and every injury its proper redress,'" and that "the very essence of civil liberty . . . consists in the right of every individual to claim the protection of the laws, whenever he receives injury." *Marbury v. Madison*, 5 U.S. 137, 163 (1803) (internal citations omitted). *See also Missouri Pac. Ry. Co. v. Humes,* 115 U.S. 512, 521 (1885) ("[i]t is the duty of every state to provide . . . for the redress of private wrongs."); *Union Pac. R. Co. v. Botsford*, 141 U.S. 250, 251 (1891) ("[n]o right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by . . . unquestionable authority of law."). *See also New York Central R.R.. v. White,* 243 U.S. 188 (1917) (doubting "whether the State could abolish all rights of action on the one hand, or all defenses, on the other, without setting up something adequate in their stead."); *Truax v. Corrigan*, 257 U.S. 312, 330 (1921) ("[t]o give operation to a statute whereby serious losses inflicted by such unlawful means are in effect made remediless, is, we think, to disregard fundamental rights of liberty and property."); *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 485 (1988) (finding there to be "[l]ittle doubt" that a creditor's cause of action against a debtor is a property interest protected by due process).

Other courts have held that the right to bring suit is a property right protected by the Due Process Clause. *See Wilson v. Gunn*, 403 F.3d 524, 527 (8th Cir. 2005) (plaintiff's right to sue under the Federal Tort Claims Act (FTCA) "is a property interest protected by due process"); *New York State NOW v. Pataki*, 261 F.3d 156, 163 (2d Cir. 2001) ("no dispute that a legal cause of action" is a property interest protected by the Due Process Clause"); *Schneider v. United States*, 27 F.3d 1327, 1333 (8th Cir. 1994) ( "a cause of action is a property interest protected by

the Due Process Clause"); *Zavala v. United States*, 876 F.2d 780, 784 (9th Cir. 1989) (right to sue under the FTCA "is property protected by due process").  *See also Lewis v. Lewis,* 351 N.E.2d 526, 528 (Mass. 1976) (under Massachusetts law, a cause of action is a form of property known as a "chose in action.").

The United States Supreme Court has rejected the argument that a pending lawsuit may not constitute property.  *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982), recognized that "[a] cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause."  *Id.*, citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  Even the case cited by the Government, *Martinez v. California*, 444 U.S. 277, 281-82 (1980), supports Plaintiffs' position.  In *Martinez* the Court stated that "[a]rguably, the cause of action for wrongful death that the State has created *is* a species of "property" protected by the Due Process Clause."  *Id.* (emphasis added).  The *Martinez* Court rejected constitutional attacks on the California law (which provided immunity for public entities and employees for parole or release decisions), not because the lawsuit against the parole board officials was not property, but – significantly – because "the State's interest in fashioning its own rules of tort law is paramount to any discernible federal interest, expect perhaps an interest in protecting the individual action that is wholly arbitrary or irrational."  *Id.* at 282.  While one can quibble with the effect of the word "arguably" in *Martinez*, what is certain is that the Supreme Court rejected the notion advanced by Kahr that a pending lawsuit is not property.  Also certain is the Supreme Court's recognition of the State's "paramount" "interest in fashioning its own tort law," which the CAA so grossly offends.

None of the lower court authority cited by Kahr or the Government contradicts these holdings, nor could it.  The arguments made by Kahr and the Government confuse two points.

26

They cite cases in which plaintiffs could recover under *statutory compensation schemes*, such as the Federal Tort Claims Act, instead of under state common law, and courts stated that a plaintiff may not have a right to pursue a *particular* cause of action.  Kahr and the Government then suggest that those cases support the CAA, even though the CAA, under Kahr's reading, completely deprives plaintiffs of *any* cause of action or *any* compensation against tortfeasors who caused them injury.  Kahr and the Government rely heavily on *Hammond v. United States*, 786 F.2d 8 (1st Cir. 1986), to support the argument that pending tort claims can be abolished. Govt. Br. at 18 (*Hammond* is "particularly relevant"); Def. Rep. at 35, 37, 39.  Kahr and the Government do not point out the key distinction between the statute upheld in *Hammond* and the CAA: the *Hammond* statute did not deprive the plaintiff of a right to redress, but merely "substitute[d] the United States as defendant . . . and ma[de] the Federal Tort Claims Act . . . the sole remedy for [her] injuries."  786 F.2d at 9.  *See also, e.g., In re Consolidated United States Atmospheric Testing Litigation*, 820 F.2d 982, 988 (9th Cir. 1987) ("The effect of §2212 is to substitute the remedy against the government under the FTCA for any cause of action against the contractors arising under state law.").   In sum, while some courts have upheld statutes that modify or alter the mode by which a plaintiff can seek compensation, all relevant authority holds that a plaintiff's right to redress cannot be utterly abrogated.  *See infra* at § III.D.

*Duke Power v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 88 (1978), on which the Government also relies heavily, Govt. Br. at 17, further supports Plaintiffs' position.  *Duke Power* upheld a statutory scheme that provided plaintiffs with full recovery for their injuries, but left open the question whether Due Process required a legislatively enacted compensation scheme to "duplicate the recovery at common law or provide a reasonable substitute remedy."

The Court did not countenance legislation, like the CAA, that utterly deprives victims of any recovery from wrongdoers such as Kahr.

The authority cited by Kahr and the Government support, at most, a statutory scheme that would replace state common law actions for gun violence victims with another mode by which they could seek compensation from wrongdoers such as Kahr. That authority does not remotely support the CAA, and all relevant authority holds that Congress cannot deprive the Plaintiffs of any right to redress from Kahr.

### D.     The Act Violates The Equal Protection Clause.

Kahr argues that rational basis review applies because the CAA does not deprive gun violence victims of a fundamental right. As discussed above, however, the Act's deprivation of victims' rights to seek civil justice in the courts infringes on a fundamental right. Kahr again relies on *Hammond* and other cases that considered legislative compensation schemes, which are inapposite here. *See supra* at § III.C. And notwithstanding the misleading out-of-context quote from *Silver v. Silver*, 280 U.S. 117 (1929), that case did not consider whether victims have a fundamental right of access to the courts. It only considered whether a statute's distinction between gratuitous guests and automobile operators and owners was arbitrary.

Moreover, the principal case cited by the Government in support of rational-basis review (Gov't Br. at 26), *Duke Power,* is, again, wholly distinguishable. The statute at issue in *Duke Power*, the Price-Anderson Act, provided for compensation in a "classic example of economic regulation—a legislative effort to structure 'the burdens and benefits of economic life,'" and therefore was subject to rational-basis review. *See* 438 U.S. at 83 (quoting *Usery v. Turner-Elkhorn*, 428 U.S. 1, 15 (1976)). The CAA, by contrast, is simply an attempt to deprive legal

remedies for a discrete class of tort victims—those injured by the wrongful conduct of gun manufacturers and sellers—and must be judged under strict constitutional scrutiny.

In any event, the Act cannot satisfy even rational basis review. Neither Kahr nor the Government attempt to rebut Plaintiffs' showing that the Act is not a rational legislative response to any legitimate purpose. Instead, they simply repeat some of the purposes stated in the Act and propose a standard of review that amounts to a rubber stamp, under which courts merely accept whatever Congress says without any reasoned analysis. But the Act's stated purposes standing alone are beside the point. The purposes expressed in the Act must be rationally furthered by the Act itself to withstand rational basis review. For example, even if there were a rational basis to declare that legal access to firearms is currently imperiled—and there is not—the goal of preserving legal access to firearms would not support shielding negligent gun companies from liability. Congress could easily have prohibited imposing liability on non-negligent gun companies without shielding negligent actors from liability.

As Plaintiffs pointed out, the Act is patently irrational if it shields from liability negligent and unlawful actors whom the Act's "author," chief sponsor, and legislative champion, Senator Craig, repeatedly stated would not and should not be protected. *See supra* at § II.B. Barring victims like the Plaintiffs in this case from obtaining relief for tortious conduct by the gun industry would fly in the face of Senator Craig's statement that, "This bill will not prevent a single victim from obtaining relief for wrongs done to them by anyone in the gun industry." 151 Cong. Rec. 9395 (July 29, 2005). Kahr's response – that classification need not be "made with mathematical nicety" – does not address the fundamental fact that the CAA is so over-inclusive that "the rules can on longer be said rationally to implement the policy judgment." *Burlington N. Ry. Co. v. Ford*, 504 U.S. 648, 653 (1992).

## **CONCLUSION**

Defendants' motion to dismiss should be denied and the stay on discovery should be lifted.

Respectfully submitted,
Plaintiffs,

By their attorneys,

_____
Hector E. Pineiro, Esquire, BBO # 555315
Robert H. Beadel, Esquire, BBO # 632447
807 Main Street
Worcester, MA 01610
Tel. (508) 770-0600
Fax (508) 770-1300

Jonathan E. Lowy
Daniel R. Vice
Elizabeth S. Haile
Brady Center To Prevent Gun Violence
Legal Action Project
1225 Eye St. NW, Suite 1100
Washington, D.C. 20005
Tel. (202) 289-7319
Fax (202) 898-0059

John Vail
Robert Peck
Andre Mara
Center for Constitutional Litigation, P.C.
1050 31st St. NW
Washington, DC 20007
Tel. (202) 944-2887
Fax (202) 944-2887