UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUANA HERNANDEZ, as Administratrix of the Estate of Danny Nicacio, and ARMANDO MAISONET,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTTSDALE INSURANCE CO. and UTICA MUTUAL INSURANCE CO.,<br><br>Defendants. | Civil Action No.<br>05-40141-FDS |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J.**

This is an action for declaratory judgment concerning the existence of insurance coverage. Plaintiffs Juana Hernandez and Armando Maisonet seek a declaration that insurance coverage exists for any judgment they may obtain in two pending state-court actions against insureds of defendants Scottsdale Insurance Co. and Utica Mutual Insurance Co.

Plaintiffs commenced this action in state court under the Massachusetts Declaratory Judgment Act, Mass. Gen. Laws ch. 231A, §1. Defendants removed the case pursuant to 28 U.S.C. § 1441(b) based on diversity jurisdiction. They now move to dismiss on the grounds that plaintiffs lack standing under Massachusetts law to seek a declaration of coverage and, in any case, have failed to state a claim upon which relief can be granted. For the reasons that follow, the Court declines to exercise jurisdiction over the matter and will remand the case to state court for further proceedings.

I.      **Factual Background and Procedural History**

This action is an offshoot of two tort actions that plaintiffs brought in state court against Kahr Arms, Inc. ("Kahr"), a gun manufacturer headquartered in Blauvelt, New York.[1]

According to plaintiffs, in March 1999, Kahr hired Mark Cronin to work in its gun manufacturing facility in Worcester, Massachusetts. Cronin stole individual gun parts from Kahr and assembled them into a working firearm outside the facility. In November 1999, he exchanged the assembled gun for $80 worth of cocaine. On December 24, 1999, an individual with the gun shot and killed Danny Nicacio and seriously wounded Armando Maisonet outside the Tropigala nightclub in Worcester.

Juana Hernandez, Nicacio's mother, brought a wrongful death action in the Worcester Superior Court against Kahr and related defendants in August 2002. Maisonet followed with a separate personal injury action in September 2002. The same attorneys represent both Hernandez and Maisonet in the underlying tort actions and in this declaratory action. In the spring of 2004, they sent demand letters pursuant to Mass. Gen. Laws ch. 93A to Scottsdale Insurance Co. and Utica Mutual Insurance Co., two of Kahr's insurers.[2] They sought $1 million from each insurer for each plaintiff. Both insurers rejected the demands on the ground that their insurance policies specifically excluded coverage for the shooting.

Plaintiffs then sought, and were granted, leave to amend their complaints to include claims

---

[1] According to the state complaints, Kahr, Inc., is a wholly-owned subsidiary of Saeilo, Inc., a Delaware corporation. For convenience, the Court will refer to Seilo and Kahr together as "Kahr."

[2] A third insurance company, General Star Management Company, is apparently defending Kahr in the underlying tort suits. Plaintiffs contend that approximately $500,000 in coverage remains on the General Star policy.

of unfair insurance practices against Scottsdale and Utica.[3]  However, plaintiffs were denied leave to add claims seeking declarations of policy coverage under Mass. Gen. Laws. ch. 231A, § 1.[4]

In April 2005, plaintiffs brought a separate declaratory judgment action in Superior Court, again seeking a declaration of policy coverage by Scottsdale and Utica.  Defendants removed that action to this Court in August 2005 on the basis of diversity jurisdiction.

While the present action was pending, Kahr moved in the Superior Court to dismiss both state tort actions based on the enactment in October 2005 of the Protection of Lawful Commerce in Arms Act, 15 U.S.C. § 7901-03, which bars certain tort actions against gun manufacturers and mandates their dismissal.  Those motions are presently under advisement.

## II.  Standard of Review

A claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In considering the merits of the motion, the Court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability."  *Redondo-Borges v. U.S. Dept. of Hous. and Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005).

---

[3] The court stayed the Chapter 93A claims pending resolution of Kahr's liability for the shootings. Plaintiffs also sought recovery under Chapter 93A from General Star; the state court stayed this claim as well.

[4] The electronic docket entries denying leave to add the declaratory judgment claims do not indicate the reasons for the denials.

### III.  Analysis

#### A.  Standing

Where federal jurisdiction is predicated on diversity of citizenship, "a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005); *see also Metro. Express Servs., Inc. v. City of Kansas City,* 23 F.3d 1369-70 (8th Cir. 1994); 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3531.14 at 90-91 (2d ed. 1984).[5]

A declaratory judgment action under Mass. Gen. Laws ch. 231A provides an appropriate vehicle for resolving disputes over the "meaning of language in an insurance policy." *Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 407 Mass. 675, 685 (1990). However, a court may enter a declaratory judgment only where an actual controversy exists between the parties and plaintiffs have standing to pursue the claim. *United Oil Paintings, Inc. v. Commonwealth*, 30 Mass. App. Ct. 958, 959 (1991). An actual controversy exists when the declaration sought is "intended to have an immediate impact on the rights of the parties." *Id.* at

---

[5] Defendants have moved to dismiss on the ground that plaintiffs lack standing as a matter of state law. They do not contend that this Court lacks subject-matter jurisdiction under Article III of the Constitution, *see Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541-42 (1986) ("standing" is among the Article III jurisdictional prerequisites), but rather that state law precludes plaintiffs from bringing the claim. The inquiries, while similar, are not coterminous. *See Leek v. Civil Service Com'n*, 60 Mass. App. Ct. 1107 n.4 (2003) (table) (decribing differences between state and federal standing inquiries); *see also* FEDERAL PRACTICE AND PROCEDURE § 3531.14 at 90.

Although Massachusetts courts consider standing a question of subject matter jurisdiction, *see Ginther v. Comm'r of Ins.*, 427 Mass. 319, 322 (1998), removal jurisdiction is no longer considered formally "derivative," so that a defendant may remove a case to federal court even when the state court lacked original jurisdiction. *See* 28 U.S.C. 1441(e); 16 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 107.12[2] (3d ed. 2006). It seems appropriate therefore to treat lack of standing as a matter of state law as a failure to state a claim. In the present case, however, the distinction is academic, as the Court is declining jurisdiction for prudential reasons.

959 (internal quotation marks omitted). Plaintiffs have standing when they have suffered or are in imminent danger of suffering a legally cognizable injury. *See Barbara F. v. Bristol Div. of Juvenile Court Dep't*, 432 Mass. 1024, 1024 (2000). These two requirements are tightly intertwined. *See United Oil Paintings*, 30 Mass. App. Ct. at 959; *see also Mass. Ass'n of Indep. Ins. Agents & Brokers, Inc. v. Comm'r of Insurance*, 373 Mass. 290, 293 (1977).

The parties have focused largely on whether a third-party claimant, in the abstract, has standing under state law to seek a declaration of coverage obligations against an alleged tortfeasor's insurer prior to obtaining a judgment against the tortfeasor.[6] Massachusetts courts have not expressly decided the issue.[7] State courts interpreting similar declaratory judgment acts have reached different conclusions. *Compare Farmers Ins. Exch. v. Dist. Court*, 862 P.2d 944, 945, 947-49 (Colo. 1993) (no standing) *and Park v. Safeco Ins. Co. of Am.*, 251 S.C. 410, 415 (1968) (same) *with Skidmore v. Throgmorton*, 323 Ill. App. 3d 417, 422 (2001) (standing) and *Community Action of Greater Indianapolis, Inc. v. Indiana Farmers Mut. Ins. Co.*, 708 N.E.2d 882, 885-86 (Ind. App. 1999) (same) (collecting cases).[8]

---

[6] Defendants also argue that plaintiffs have failed to state a claim because the clear language of the policy precludes coverage. That argument, however, goes to the merits; if standing exists, and the language is clear, then the appropriate response is a declaration of non-coverage, not dismissal of the claim. *See Reliance Ins. Co. v. Aetna Cas. & Sur. Co.*, 17 Mass. App. Ct. 218, 219-20 (1983).

[7] On several occasions, an insurer has joined an injured-party claimant in a declaratory action against the insured party prior to entry of judgment in the underlying tort suit. *See, e.g.*, *Citation Ins. Co. v. Gomez*, 426 Mass. 379 (1998); *Aetna Cas. & Sur. Co. v. Cotter*, 26 Mass. App. Ct. 56 (1988). If an actual controversy exists between the insurer and the injured party, as these cases imply, it would seem that the injured party himself may seek to resolve the controversy by bringing a declaratory action as a plaintiff. However, "[q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Webster v. Fall*, 266 U.S. 507, 511 (1925).

[8] These states, like Massachusetts, have adopted versions of the Uniform Declaratory Judgments Act. *See* Mass. Gen. Laws. Ann. ch. 231A, §1 hist. n. (West 2000); Colo. Rev. Stat. § 13-51-101; S.C. Code Ann. § 15-53-10; 735 Ill. Comp. Stat. 5/2-701; Ind. Code § 34-14-1.

Defendants contend that plaintiffs lack standing under state law because they have not obtained a judgment against the insured party, and until they do so they lack "any personal rights that will be directly affected by the declaratory judgment." (Defs' Mot. Dismiss at 7).  However, Massachusetts law imposes specific duties on insurers dealing with third-party claimants. *See* Mass. Gen. Laws ch. 176D, § 3(9); *Clegg v. Butler*, 424 Mass. 413 (1997).  These duties arise—and therefore may be breached—*before* the claimant obtains a judgment against the insured party. *Clegg*, 424 Mass. at 418-19.  Specifically, ch. 176D, § 3(9) imposes a duty of good faith and fair dealing throughout settlement negotiations with third-party claimants, and subsection (f) requires "prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  Liability is "reasonably clear," if "a reasonable person, with knowledge of the relevant facts and law," would conclude "that the insurer [is] liable to the plaintiff." *Demeo v. State Farm Mut. Auto Ins. Co.*, 38 Mass. App. Ct. 955, 956-57 (1995).

Defendants have denied plaintiffs' settlement demands specifically on grounds of the policy exclusions.  (Compl. ¶¶ 25, 27; Defs' Mot. Dismiss at 3).  Thus, whether liability has become "reasonably clear"—triggering defendants' duty to make a reasonable settlement offer—hinges in part on the meaning of the policy exclusions at issue.

As a result, there is ample reason to believe that an actual controversy exists regarding the meaning of the policy language, and that plaintiffs have standing to seek a declaration of its meaning. *See Clegg*, 424 Mass. at 418 (in context of Chapters 93A and 176D, injury "simply refers to the invasion of any legally protected interest"; plaintiffs need not demonstrate pecuniary

6

harm) (internal quotation marks omitted).[9]  However, in an abundance of caution, and out of respect for the state court's prerogative to decide issues of state law, this Court will simply assume, without deciding, that plaintiffs have standing under Massachusetts law.  Likewise, the Court will assume, without deciding, that the dispute meets that Article III requirements for a case or controversy.  *See Bankers Trust Co. v. Old Republic Insurance Co.*, 959 F.2d 677, 680-83  (7th Cir. 1992) (third-party claimant has sufficient interest in tortfeasor's insurance policy to create actual controversy with insurer); *but cf. Indemnity Ins. Co. of North America v. Kellas*, 173 F.2d 120, 124-127 (1st Cir. 1949) (stating in dicta that no actual controversy existed between third-party claimant and insurer until judgment obtained).  Such a course is appropriate because federal courts have considerable discretion in entertaining declaratory actions, even where plaintiffs meet the jurisdictional prerequisites.[10]  For the reasons discussed below, the Court will decline jurisdiction in the present case, and therefore need not decide the issue of standing.  *Cf. Henry v. Connolly*, 743 F. Supp. 922, 926 (D. Mass. 1990) (court should ordinarily decide standing first, but where jurisdictional issue is complex and claim is clearly without merit, court may move directly to merits) (collecting cases).

---

[9] A contrary holding would seem to run counter to case law conferring upon third-party claimants both substantive rights and standing to enforce them under Chapter 176D.  It would be strange, indeed, if plaintiffs—who indisputably have standing to bring a coercive action based on defendants' allegedly unreasonable interpretation of the policy language—nonetheless lack standing to seek a declaratory judgment as to the meaning of that language.  The fact that plaintiffs already sought coercive relief is relevant to whether this Court should, in its discretion, exercise jurisdiction; but it is irrelevant to whether plaintiffs have *standing* to pursue it.

[10] Assuming that the existence of jurisdiction is particularly appropriate in the present case because the removal statute requires remand, rather than dismissal, in the absence of federal subject matter jurisdiction.  28 U.S.C. § 1447(c).  Thus, the ultimate disposition is the same whether the court lacks subject matter jurisdiction or simply declines to exercise its jurisdiction.

### B. <u>Discretion to Grant Declaratory Judgment</u>

In general, "federal courts have 'a virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). However, in the declaratory judgment context, that principle occasionally "yields to considerations of practicality and wise judicial administration." *Id.* at 288. Accordingly, a district court has substantial discretion to decline to enter a declaratory judgment. *DeNovellis v. Halala*, 124 F.3d 298, 313 (1st Cir. 1997); s*ee also Wilton*, 515 U.S. at 287 (the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.") (internal quotation marks omitted).[11]

When a pending state-court case involves the same parties, arises out of the same transaction, and presents an "opportunity for ventilation of the same issues," *id.* at 290, a federal court should generally abstain from declaring the rights of the parties. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942) (exercising jurisdiction over declaratory action in light of pending parallel state proceeding may amount to "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation"); *see also Wilton*, 515 U.S. at 283 (applying *Brillhart* where parallel state action is pending). As previously discussed, each plaintiff presently has unfair insurance practice claims pending against both Scottsdale and Utica in state court.

---

[11] Although plaintiff brought this case under the Massachusetts act, the Federal Declaratory Judgment Act is procedural in nature, and thus, the discretion it affords applies with full force in the present context. *See Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 755 (9th Cir. 1996), (discretion under federal law applies in declaratory action removed from state court), *overruled on other grounds by Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998); *Haagen-Dazs Shoppe Co. v. Born*, 897 F. Supp. 122, 126 (S.D.N.Y. 1995) (same) (collecting cases).

These Chapter 93A claims are direct actions against the insurers that place interpretation of the policy exclusions squarely before that court. Defendants will likely make the same substantive arguments regarding the policy exclusions as they have in the present proceeding. *See Brillhart*, 316 U.S. at 495 (court should consider, *inter alia*, "the scope of the pending state court proceeding and the nature of defenses open there"). "[W]ise judicial administration" counsels against federal interference with that litigation. *Cf., e.g.*, *Republic Ins. Co v. Sinclair Oil Corp.*, 791 F. Supp. 278, 283 (D. Utah 1992) (declining jurisdiction over insurer's declaratory action where bad faith action against insurer was pending in out-of-state district court).[12]

Moreover, a declaration of defendants' contractual obligations here would be of limited practical value. As for the Chapter 93A dispute, a declaration of policy coverage is insufficient to affix liability. *See Rischitelli v. Safety Ins. Co.*, 423 Mass. 703, 704 (1996) (insurer entitled to decline coverage "when there was a reasonably debatable question of policy interpretation"). As for the issue of defendants' obligation to indemnify Kahr in the underlying tort suits, two obvious problems arise. First, the obligation will become moot if the state court dismisses the underlying tort claims. A federal court should hesitate to expend judicial resources in interpreting a contract under state law in such circumstances. *See In re Columbia Univ. Patent Litig.,* 343 F. Supp. 2d 35, 42 (D. Mass. 2004) ("[E]ven where an actual case or controversy exists, the court must make a reasoned judgment whether the investment of time and resources will be worthwhile.") (citations and internal quotation marks omitted). Second, Kahr is not a party to this declaratory

---

[12] Although the state court has stayed the proceedings, it did so apparently to effect an orderly and comprehensive resolution of the dispute among the numerous parties to plaintiffs' tort cases. To assume jurisdiction under such circumstances would pose no less an encroachment on state jurisdiction than if the Chapter 93A claims were being actively litigated at present.

action and therefore cannot be bound by it. Thus, even if the Court were to declare that the policies excluded coverage for the shooting, the preclusive effect of that holding would extend only to the Chapter 93A claim between the parties presently before the court.[13] If plaintiffs obtained judgments against Kahr in the underlying tort suits, Kahr would likely relitigate the coverage issue in a separate action. *See Warner*, 288 F. Supp. 2d at 130; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Mass. Mun. Wholesale Elec. Co.*, 117 F.R.D. 321, 322-23 (D. Mass. 1987) (refusing to dismiss tort claimant as party to declaratory action between insurer and insured because "declaratory judgment would be of little use . . . if [claimant] can relitigate the precise issue in subsequent suit"). Such piecemeal litigation would waste judicial resources and raises the obvious possibility of inconsistent judgments between the federal and state courts. *See generally Mitcheson v. Harris*, 955 F. 2d 235, 239-40 (4th Cir. 1992) (discussing judicial federalism, efficiency and comity concerns, and noting that "[w]hile inefficiencies can of course occur within a single court system, the prospects for coordinated management and alleviation of [federal-state] abrasion are greater when the litigation is handled under one jurisdictional roof.").

Under the circumstances, prudential considerations weigh heavily against exercising jurisdiction over plaintiffs' claim. Because this case was removed from state court on diversity grounds, this Court may remand it, rather than dismiss it, in order to allow orderly and comprehensive adjudication of this dispute. *See Golden Eagle*, 103 F.3d at 756; 12 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 57.42[2][d] at 117 (3d ed. 1998).

## IV. <u>Conclusion</u>

For the foregoing reasons, Defendants' Joint Motion to Dismiss Pursuant to Fed. R. Civ.

---

[13] Because the Court is declining jurisdiction, it will not address whether Kahr is an indispensable party within the meaning of Fed. R. Civ. P. 19.

P. 12(b)(6) or to Stay Action if Not Dismissed in its Entirety is DENIED, and the matter is hereby remanded to the Superior Court.

**So Ordered.**

|  |  |
|---|---|
| Dated: August 3, 2006 | /s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge |